Prince Ro'Djrell YAMOBI a/k/a Roderick Wright Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 71S00–9507–CR–843.

Supreme Court of Indiana.

Oct. 29, 1996.

Brian J. May, South Bend, for Appellant-Defendant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Office of Attorney General, Indianapolis, for Appellee-Plaintiff.

BOEHM, Justice.

A jury convicted Roderick Wright of murder [1] and the trial court sentenced Wright to 60 years in prison. The State alleged that Wright fatally shot James Dillard. Wright raises three issues for review in this appeal:

I. Was Dillard's statement to a police officer identifying Wright as his assailant properly admitted under the excited utterance exception to the hearsay rule, Ind. Evidence Rule 803(2)?

II. Did the trial court err when it permitted the prosecutor to demonstrate for the jury, with Wright's assistance, the confrontation between Wright and Dillard that led to the shooting?

III. Was Wright's conviction supported by sufficient evidence?

We affirm.

## I. Factual & Procedural Background

The evidence at trial showed that on June 12, 1990 Roderick Wright and James Dillard drove to a house on Nash Road in South Bend for the purpose of selling cocaine to a prospective purchaser named Douglas. Wright, who had cocaine on his person at the time, was a known drug dealer. Dillard had helped locate buyers for Wright and was the driver that evening. Upon reaching what the two believed to be Douglas' house, Wright left the car, knocked on the door, and was told by an unidentified man that no one named Douglas resided there. The time was between 8:30 and 9 PM.

Wright changed his account of the events of that night several times. Except as noted, these facts are Wright's testimony. When Wright returned to the waiting vehicle, he found Dillard pointing a gun at him and demanding that Wright surrender the drugs. Wright pushed the gun away and it discharged. Dillard got out of the car and tried to chase Wright after the shooting, but fell over on his back. As Dillard lay on the ground, Wright fled the scene in Dillard's car and was apprehended a few weeks later in Omaha, Nebraska. It is undisputed that Dillard sustained a chest wound during the confrontation and died early the next morning in a South Bend hospital.

In response to a police radio dispatch, Corporal Michael J. Nemes of the St. Joseph County Police Department arrived at the scene at approximately 9:30 PM to investigate the shooting. Nemes found Dillard lying on his back, rolling on the ground, and in pain. Nemes got down on his knees and asked Dillard: "Who shot you?" Dillard, speaking quietly, replied: "Rod shot me and stole my car." Over Wright's objection, the trial court admitted Dillard's statement under the "excited utterance" exception to the hearsay rule. Because Dillard's condition did not appear to be life-threatening, police did not take a formal statement from Dillard before he died. The jury convicted Wright

1. IND.CODE § 35–42–1–1 (1993).

of one count of murder. This appeal followed. This Court has jurisdiction under Indiana Appellate Rule 4(A)(7).

## II. Excited Utterance

■ Hearsay is an out-of-court statement offered to prove the truth of its contents. Evid.R. 801(c). Hearsay is generally inadmissible unless the statement falls within one of the established hearsay exceptions. Evid.R. 802. In this case, the trial court admitted Dillard's statement to Officer Nemes—an important component of the State's case—under the exception provided by Evidence Rule 803(2) for excited utterance. Because the State offered Dillard's response as proof that Wright was the assailant, it is hearsay. We review evidence rulings for an abuse of discretion. *Averhart v. State*, 470 N.E.2d 666, 686 (Ind.1984), *reh'g denied, cert. denied*, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 323 (1985).

■ This is the first occasion for this Court to deal with the excited utterance exception under the Indiana Rules of Evidence promulgated in 1994. For a hearsay statement to be admitted as an excited utterance, three elements must be shown: 1) a startling event occurs; 2) a statement is made by a declarant while under the stress of excitement caused by the event; and 3) the statement relates to the event. Evid.R. 803(2). Application of these criteria is not mechanical. Rather, under Rule 803(2), like its predecessor common-law doctrine, the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Teague v. State*, 269 Ind. 103, 379 N.E.2d 418, 422 (1978), *reh'g denied*. The statement must be trustworthy under the facts of the particular case. The trial court should focus on whether the statement was made while the declarant was under the influence of the excitement engendered by the startling event.

■ Wright makes two arguments to support his claim that Dillard's declaration was not an excited utterance. First, Wright asserts the statement is untrustworthy because it was given in response to a question. Second, Wright argues that Dillard had time to compose himself and concoct a false answer. Neither contention is persuasive.

■ A declaration does not lack spontaneity simply because it was an answer to a question. Whether given in response to a question or not, the statement must be unrehearsed and made while still under the stress of excitement from the startling event. *See generally* 13 R. MILLER, INDIANA PRACTICE § 803.102 at 607 (2d ed. 1995) (citing cases). Here, Dillard lay prostrate suffering from what proved to be a life-ending injury when Nemes arrived at the scene. There are no signs in the record, and Wright does not argue, that Dillard interacted with anyone else before Nemes' arrival. The trial court could reasonably have concluded from these facts that Dillard was still under the stress of excitement from the shooting when Nemes arrived. While the form of any questioning is also a factor in the admissibility equation, in this case Dillard's response was to Nemes' first and only question. Even though he had a duty to gather evidence, Nemes did not interrogate Dillard or otherwise suggest a particular answer.

■ Wright correctly notes that the time between the startling event and the hearsay statement is one factor to be considered in determining admissibility as an excited utterance. While a declaration is generally less likely to be admitted if it is made long after the startling event, e.g., *Lewis v. State*, 554 N.E.2d 1133 (Ind.1990), *reh'g denied*, the amount of time that has passed is not dispositive. *Webb v. Lane*, 922 F.2d 390, 394 (7th Cir.1991). In some cases, we have held hearsay declarations made minutes after the startling event to be inadmissible. *See, e.g., Kelley v. Dickerson*, 213 Ind. 624, 13 N.E.2d 535 (1938), *reh'g denied* (statement 15 minutes after auto accident inadmissible). However, in other cases statements made hours after the event were admitted. *Webb*, 922 F.2d at 395. Again, the central issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made. 13 R. MILLER, INDIANA PRACTICE § 803.102 at 607 (2d ed. 1995) ("Inquiry under Rule 803(2) focuses on whether the declarant remained excited").

Although the record is not entirely clear on the amount of time that elapsed between the time of the shooting and Nemes' arrival at the scene, the evidence tended to show it was 30 minutes to one hour. During that window of time, Dillard lay on his back bleeding and in pain from the shooting. Assuming Dillard had as long as one hour to reflect, this was certainly enough time to conjure up a false story regarding the identity of his assailant. The question here, however, is whether Dillard was capable of this reflection and deliberation. The trial court could reasonably have concluded that Dillard was not. Being shot is a traumatic event, both physically and psychologically. Its startling effect, depending on the severity of the injury, can continue for hours or longer. Nemes found Dillard in exactly the same condition Wright had left Dillard: on his back, bleeding, and in pain. Under these facts, it was reasonable to infer that Dillard was still under the stress of the shooting when Nemes went to Nash Road to investigate the incident.

*Webb*, which was decided under a federal evidence rule [2] identical to the Indiana rule implicated in this case, involved facts and issues very akin to those present here. In *Webb*, the defendant shot a man six times in an alley. In response to a radio dispatch, a police officer arrived on the scene minutes later. After asking the victim for his name, the officer inquired about the identity of the assailant. The victim, who was lying in the alley covered in blood, named the defendant. The victim was taken to a hospital and repeated this identification several times during his initial treatment. *Webb*, 922 F.2d at 392. Besides the obvious factual similarities, the defendant in *Webb* challenged the hearsay statements, all of which were admitted, under the same legal theories Wright advances here. The Seventh Circuit in *Webb* rejected the contention that the statements were untrustworthy because they were initi-

ated by a police officer's question.[3] The court also dismissed the argument that too much time had passed between the shooting and some of the statements. In affirming the district court, the Seventh Circuit emphasized the violent nature of the startling event and the concomitant inability for reflective thought. *Id.* at 393–95.

■ The Indiana rule on excited utterance mirrors the federal rule. *See* FED.R.EVID. 803(2). In this case, there is no inconsistent Indiana body of law.[4] We have addressed in several decisions whether a shooting victim's identification of the assailant was properly admitted as an excited utterance under common law. In nearly every instance, we held the statement to be admissible. *See Corder v. State*, 467 N.E.2d 409, 414–15 (Ind.1984); *Teague*, 379 N.E.2d at 422; *Walker v. State*, 265 Ind. 8, 349 N.E.2d 161, 163–64 (1976), *cert. denied*, 429 U.S. 943, 97 S.Ct. 363, 50 L.Ed.2d 313 (1977); *Robinson v. State*, 184 Ind. 208, 110 N.E. 980 (1915); *cf. Jones v. State*, 71 Ind. 66, 80–83 (1880) (holding shooting victim's identification of assailant inadmissible). These cases buttress today's result, but trial courts should not abdicate rational analysis in cases where a shooting victim has fingered a possible perpetrator. Fairness to the defendant requires an assessment of whether the declarant's statement was the product of reflective thought. We hold the trial court did not abuse its discretion when it admitted Dillard's statement under the excited utterance exception to the hearsay rule.

## III. Courtroom Demonstration

■ As his second claim of error, Wright argues that the trial court improperly allowed the prosecutor to demonstrate the physical sequence of events in which Dillard was shot. Wright asserts the conditions in the front seat of Dillard's car were not rea-

---

2. FED R.EVID. 803(2).

3. In *Webb*, the officer's exact question was: "Do you know who shot you?" *Webb*, 922 F.2d at 393.

4. One objective in adopting our rules of evidence was the development of a uniform body of law governing trials in both state and federal courts. In the absence of a unique Indiana policy, constitutional or statutory consideration, courts in this state should normally construe Indiana evidence rules consistently with the prevailing body of decisions from other jurisdictions interpreting the same rule.

sonably duplicated in the courtroom, but does not explain how this discrepancy—assuming one existed—prejudiced him or influenced the outcome of the trial. We review the admissibility of courtroom demonstrations for an abuse of discretion. *Lambert v. State,* 643 N.E.2d 349, 353 (Ind.1994), *petition for reh'g pending.*

 In *Lambert,* we noted that several factors should be considered in assessing whether a demonstration was an abuse of discretion. Specifically, we look at any difficulty in preserving the demonstration for challenge on appeal; the degree of accuracy of the recreation; the complexity and duration of the procedure; other available means of proving the same facts; and risk of unfairness to the defendant. *Id.* Applying those factors here, the demonstration was within the trial court's discretion. The exact physical positioning of Wright and the prosecutor are unclear from the record, but the demonstration sufficiently comported with the mechanics of the confrontation that led to Dillard's death. The demonstration enabled Wright to show the jury exactly how the gun was pointed at him, and what Wright did to push the gun away. Simulating this exchange was not complex, and the trial court ensured its accuracy by repositioning the prosecutor and Wright to resemble the seating arrangement in Dillard's car. It was the province of the jury to assess whether Wright's account was credible, and it found otherwise.

The trial court did not abuse its discretion when it allowed the prosecutor, with Wright's assistance, to demonstrate for the jury the shooting incident that occurred in the front seat of Dillard's car.

### IV. Sufficiency of the Evidence

 Finally, Wright argues that the jury's verdict was not supported by sufficient evidence. When evaluating this claim, we do not reweigh evidence or assess the credibility of witnesses. A conviction will be affirmed if probative evidence was presented at trial that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Jordan v. State,* 656 N.E.2d 816, 817 (Ind. 1995).

Instead of challenging the State's evidence, Wright's claim on this point amounts to disputes over the inferences (e.g., motive and state of mind) that may be drawn from the evidence, and a request that this Court reweigh parts of the State's case. This is not within our province on appeal. Accordingly, Wright's claim of insufficient evidence also fails.

### Conclusion

The jury conviction of Roderick Wright for the murder of James Dillard is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.