**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KEVIN WILD**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LOGAN WETZEL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1111-CR-612 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert Altice, Jr., Judge
The Honorable Amy Barbar, Magistrate
Cause No. 49G02-1105-FC-34931

**July 5, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Logan Wetzel appeals from his conviction after a bench trial of one count of Battery[1] as a class C felony and one count of Criminal Confinement[2] as a class D felony. Wetzel presents the following restated issue for our review:

1. Did the trial court abuse its discretion by admitting the victim's out-of-court statements?

2. Is the evidence sufficient to support Wetzel's convictions?

We affirm.

In April 2011, K.D., the seventeen-year-old victim, was involved in a relationship with Wetzel, who was then nineteen years old. K.D. and Wetzel had a one-year-old son in common and K.D. was pregnant with a second child. Wetzel was aware that K.D. was pregnant. There was conflicting evidence about whether K.D. and Wetzel lived in the same house, but the witnesses agreed that K.D. spent considerable time at the house where Wetzel lived with his mother.

On April 22, 2011, K.D., who was at Wetzel's house, telephoned her father, Robert. At trial, Robert testified that K.D. was upset, crying, and sounded scared during that telephone conversation. Robert heard a voice he recognized as Wetzel's in the background yelling and screaming obscenities, and shouted for K.D. to "get the 'F' of[f] the phone." *Transcript* at 24. K.D. asked Robert to come to the house and take her home right away because Wetzel was fighting and hitting her again. Robert, who described K.D. as crying, screaming, and hysterical, told K.D. that he would be there quickly.

---

[1] Ind. Code Ann. §35-42-2-1 (West, Westlaw current through legislation effective May 31, 2012).
[2] Ind. Code Ann. §35-42-3-3 (West, Westlaw current through legislation effective May 31, 2012).

Lisa, Robert's friend who knew K.D. and Wetzel well, came with Robert to Wetzel's mother's house to pick up K.D. Robert lived a block and a-half away from where K.D. and Wetzel were arguing and arrived in less than a minute. When they arrived, Robert and Lisa could hear Wetzel and K.D. yelling and screaming. They went upstairs to the threshold of the bedroom. There, Lisa saw K.D. on the floor in the doorway, Wetzel was holding K.D. down, and K.D. was screaming for him to let her go. Wetzel used his hand to push down on K.D.'s shoulder. Robert saw K.D. struggling to get out of the room.

Lisa climbed between K.D. and Wetzel, and Lisa pulled K.D. off the floor so that she could leave the room. Robert picked up Wetzel's one-year-old son, who was crying nearby, and carried him downstairs. Lisa and K.D. proceeded downstairs as well. Wetzel continued to shout at K.D. about some cigarettes. As soon as Lisa was outside the house, she called 911. When Wetzel heard that police officers were coming, he ran from the scene.

K.D., Robert, Lisa, and K.D.'s child waited in Robert's truck for three or four minutes until police officers arrived. While waiting for police officers to arrive, Robert observed a lump on K.D.'s eye and redness on the side of her face and wrists. He described her as looking like she had been struggling. Lisa also observed a knot on K.D.'s right eyebrow that was discolored, and she had red marks on her chest and arms. K.D. told Robert that Wetzel had hit her on her face and near her eye. Lisa tried to calm K.D. while they waited. The police officer who arrived observed that K.D. was still "visibly a bit shaken." *Id*. at 52.

The State charged Wetzel with one count of battery as a class C felony, one count of criminal confinement as a class D felony, two counts of domestic battery as a class D felony, one count of domestic battery as a class A misdemeanor, and one count of battery as a class

3

A misdemeanor. At the conclusion of the bench trial, the trial court acquitted Wetzel of two counts alleging domestic battery as a class D felony, but found him guilty of the remaining counts. The trial court then merged the class A misdemeanor domestic battery count and the class A misdemeanor battery count with the count charging battery as a class C felony. The trial court then entered judgment of conviction for one count of class C felony battery and one count of class D felony criminal confinement. The trial court sentenced Wetzel to 4 years in the Department of Correction for the class C felony battery conviction, to be served concurrently with Wetzel's sentence of 545 days for the class D felony criminal confinement conviction. Wetzel filed a motion to correct error that was denied by the trial court. Wetzel now appeals.

1.

K.D. did not honor the subpoena for her testimony and did not testify during Wetzel's bench trial. Wetzel argues that the trial court abused its discretion by admitting certain statements, i.e., K.D.'s comments during her telephone conversation with Robert, and statements K.D. made to Robert while waiting for police officers in Robert's truck, via Robert's and Lisa's testimony. More specifically, Wetzel claims that Robert's and Lisa's testimony about what K.D. said were subject to hearsay and Sixth Amendment[3] confrontation rights objections. He contends that the statements were not inherently reliable, were

---

[3] Although Wetzel objected on Sixth Amendment grounds at his bench trial, he makes no such argument here on appeal. Thus, we will consider and decide only the hearsay argument.

untrustworthy, and were subject to deliberate falsification.

A trial court has broad discretion in ruling on the admissibility of evidence. *Scott v. State*, 855 N.E.2d 1068 (Ind. Ct. App. 2006). We will consider the conflicting evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant. *Taylor v. State*, 891 N.E.2d 155 (Ind. Ct. App. 2008). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or it misinterprets the law. *Id.* We will not reweigh the evidence or reassess witness credibility. *Kelley v. State*, 825 N.E.2d 420 (Ind. Ct. App. 2005).

Hearsay is an out-of-court statement offered to prove the truth of its contents. Evid. R. 801(c). Hearsay generally is inadmissible unless the statement falls within one of the established hearsay exceptions. Evid. R. 802. The trial court ruled that testimony about K.D.'s statements was admissible under the excited utterance exception to the hearsay rule. Because K.D. did not testify at trial, Robert's and Lisa's testimony about the content of K.D.'s statements is hearsay. "For a hearsay statement to be admitted as an excited utterance, three elements must be shown: 1) a startling event occurs; 2) a statement is made by a declarant while under the stress of excitement caused by the event; and 3) the statement relates to the event." *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996) (citing Evid. R. 803(2)). The inquiry involves whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection. *Yamobi v. State*, 672 N.E.2d 1344.

The time between the startling event and the hearsay statement is among the factors to be considered in determining the admissibility of the statement under the excited utterance exception. *Id.* The amount of time that has passed, however, is not dispositive of the issue.

5

*Id.* Additionally, the declaration does not lack spontaneity merely because it was a response to a question posed. *Id.* The statement must be unrehearsed and made while the declarant remains under the stress of excitement from the startling event. *Id.*

Wetzel does not argue the non-existence of a startling event or that K.D.'s statements relate to the event. Regarding K.D.'s telephone conversation with Robert, her father, we observe that her statements were made while the startling event was ongoing. Robert could hear and Lisa could overhear K.D.'s tone of voice, which was described as crying, screaming, and hysterical. Wetzel's voice could be heard in the background yelling and screaming obscenities. K.D. described the situation to her father by saying Wetzel was fighting again and hitting her again. Robert responded to the information by asking no questions, but indicating that he would be there right away. We do not find an abuse of the trial court's discretion in admitting this statement, because it was made while the startling event was ongoing and there was no time for thoughtful reflection.

Regarding the statements K.D. made to Robert and Lisa while she was in the truck, we note the lack of time for thoughtful reflection. Robert testified that he was able to reach Wetzel's mother's house, which was a block and a-half away from his house, in approximately a minute. Robert and Lisa went upstairs and were able to free K.D. and walk with her to the truck. Lisa called 911 as soon as she was out of the house. Officers responded in approximately three or four minutes and K.D.'s statements were made during that three or four-minute wait. Thus, K.D.'s statements were made to Robert three or four minutes after she was no longer being confined by Wetzel. Lisa testified that she had to help K.D. calm down. When the officer arrived, K.D. remained visibly a bit shaken. Given these

6

facts, we cannot say that the trial court abused its discretion by admitting K.D.'s statements to Robert in the truck under the excited utterance exception to the hearsay rule.

Wetzel's argument that K.D.'s statements were unreliable also fails. K.D.'s statements were made without the time or capacity for thoughtful reflection. She related facts within her personal knowledge. Her first statement to Robert that Wetzel was fighting and hitting her, was corroborated by the scene Robert and Lisa witnessed when they arrived at Wetzel's mother's house. K.D.'s more specific statement in the truck, i.e. that Wetzel had struck her in the face and near her eye, were corroborated by Robert's and Lisa's observations that K.D. had a lump or knot on her eye or eyebrow, and that there was redness on K.D.'s face. This evidence is a strong indication of the reliability of K.D.'s statements about the battery. There is no abuse of discretion here.

2.

Wetzel challenges the sufficiency of the evidence to support his convictions. Our standard of review for challenges to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inference that can be drawn from such evidence." *Id*. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id*.

*Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

7

In order to establish that Wetzel committed battery,[4] the State was required to prove beyond a reasonable doubt that Wetzel knowingly or intentionally touched K.D. in a rude, insolent, or angry manner resulting in bodily injury to a pregnant woman and Wetzel knew she was pregnant. I.C. §35-42-2-1(a)(8). The evidence adduced at trial established that Wetzel hit K.D. in her face and her eye, that her injuries included a lump or knot on her right eye and red marks on her face, chest, and arms. In the 911 call, Lisa identified Wetzel and said that he was beating up a pregnant woman. Wetzel knew that K.D. was pregnant and had participated in several discussions about her pregnancy. There is sufficient evidence to support Wetzel's conviction of class C felony battery.

In order to establish that Wetzel committed criminal confinement, the State was required to prove beyond a reasonable doubt that Wetzel knowingly or intentionally confined K.D. without her consent. I.C. §35-42-3-3(a)(1). The record reflects that both Robert and Lisa saw Wetzel holding K.D. down in the bedroom doorway threshold. K.D. was struggling to get out of the room and was screaming for Wetzel to let her go. Lisa had to climb between Wetzel and K.D. so that K.D. could break free. This evidence is sufficient to support Wetzel's conviction of criminal confinement as a class D felony.

Wetzel points out that K.D. did not cooperate with the prosecution of these offenses and recanted after Wetzel's conviction. K.D. completed an affidavit after Wetzel's trial, which was submitted as an exhibit in Wetzel's motion to correct error. In the affidavit, K.D.

---

[4] We observe that technical amendments have been made to the battery statute effective July 1, 2012. Wetzel's conviction under the version of the battery statute then in effect is not impacted by those technical amendments, which will become effective at a later date. 2012 Ind. Legis. Serv. P.L. 114-2012 (S.E.A. 26)(West).

8

recanted her allegations of battery and confinement against Wetzel. Wetzel's motion also included allegations that K.D. recanted during a contempt hearing and made a similar statement to Wetzel's probation officer prior to Wetzel's sentencing. Our Supreme Court has said the following about such circumstances:

> One recent scholarly article estimates that between eight and ninety percent of domestic violence victims recant their accusations or refuse to cooperate with a prosecution. The reasons why a victim might choose to recant or not cooperate are varied and complex, including a fear of additional violence by the abuser, a belief that the abuser will "change" if no prosecution occurs, and legitimate economic concerns if the abuser was the primary financial provider and is facing prison time.

*Fowler v. State*, 829 N.E.2d 459, 470-71 (Ind. 2005), *cert. denied*, *abrogated in part on other grounds by Giles v. California*, 554 U.S. 353 (2008).

We review deferentially the trial court's discretionary ruling denying a motion to correct error predicated on newly discovered evidence. *Godby v. State*, 736 N.E.2d 252 (Ind. 2000). We will only reverse for an abuse of discretion, which occurs when the judgment goes against the logic and effect of the facts or the trial court has misinterpreted the law. *Martinez v. State*, 917 N.E.2d 1242 (Ind. Ct. App. 2009). Recantation or an admission of perjury does not automatically mandate an order granting a new trial. *Id.* In order to obtain a new trial based on newly discovered evidence, the following must be established by the proponent of the new trial: (1) The evidence was not available at trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy or credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result. *Godby v. State*, 736 N.E.2d 252. The proponent has the burden of

establishing that all nine prerequisites for a new trial have been met.  *Id.*  We observe that, at a minimum, K.D.'s subsequent recantation is merely impeaching, and thus, Wetzel cannot meet his burden of establishing all nine prerequisites for a new trial.  The trial court did not abuse its discretion by denying Wetzel's motion to correct error based on this newly discovered evidence.

Judgment affirmed.

MAY, J., and BARNES, J., concur.