**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 29 2014, 10:02 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID P. LYNCH**
Amy Noe Law
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMAS WALKER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A01-1305-CR-248 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE SUPERIOR COURT
The Honorable Gregory Horn, Judge
Cause No. 89D02-1202-FB-16

**January29, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issue

Thomas Walker appeals his conviction for receiving stolen property, a Class D felony. Walker presents one issue for our review: whether a hearsay statement made to a police officer by an eye witness more than nineteen minutes after a burglary was properly admitted as an excited utterance. Concluding the challenged hearsay testimony was improperly admitted but that its admission was harmless error, we affirm.

## Facts and Procedural History

On January 30, 2012, Jordan Blackwell was alone at a residence belonging to his grandfather, Gary Sandifar, and uncle, Westin Sandifar. Blackwell was working on two vehicles inside the garage. He heard the dog barking furiously and opened the garage door to find out the cause of the commotion. He looked outside and saw someone climbing into a grey Neon and speeding out of the driveway. Blackwell searched the house and found that a television was missing. He then returned outside and discovered a cell phone on the ground. Believing the grey Neon belonged to Walker, with whom Blackwell was acquainted, Blackwell called Walker's phone number, and the discovered cell phone rang and displayed Blackwell's call. Blackwell also observed a shoeprint in the yard, which left an impression of the Air Jordan symbol in the mud.

Next, Blackwell called his uncle, Chris Blackwell, who is a patrolman with the Wayne County Sheriff's Department. Centerville Police Officer Matthew Alexander was dispatched soon after and arrived at the house approximately nineteen minutes after Blackwell made the call to the discovered cell phone. Blackwell gave Officer Alexander the cell phone and showed him the footprint; he also informed the officer that he believed the burglar's vehicle belonged to Walker. Officer Alexander questioned Blackwell

2

regarding the identity of the burglars, but Blackwell's response—discussed below—was a matter of dispute at trial.

Later that evening, the police found Walker at a friend's residence. Officer Alexander informed Walker that the police were investigating a burglary that occurred at the Sandifar residence; Walker said he was at the Sandifar residence smoking marijuana earlier that day but denied any involvement in a burglary. Officer Alexander noticed Walker was wearing a pair of Air Jordan shoes and requested to inspect the shoes. Walker refused this request and asked that the police obtain a warrant. The police waited outside and began the process of obtaining a warrant. At this time, the police observed smoke coming from the residence and required all of the occupants to exit. Walker informed Officer Alexander that he "accidentally placed his shoes on the stove." Transcript at 360. Walker was then placed under arrest. Walker told Officer Alexander: "Yeah, you didn't find no fuckin' TV so you have to pin some other shit on me." Tr. at 369. Prior to that time, the police had not told Walker that a television had been stolen from the Sandifar residence.

Westin Sandifar found his stolen television near a cornfield the following day. The police attempted to lift finger prints from the television but were unsuccessful.

After the burglary, Walker spoke with both Gary Sandifar and Westin Sandifar. Gary informed Walker that it was his house that was broken into and from which the television was stolen. Walker admitted to taking the television and told Gary he was "sorry" and "I wasn't the only one involved in this." Tr. at 234. Walker also told Westin he was "sorry" during a chance encounter at the post office. Tr. at 270.

On February 1, 2012, the State charged Walker with burglary, a Class B felony; arson, a Class B felony; and obstruction of justice, a Class D felony. The State also alleged that Walker was an habitual offender. The charge of arson was dismissed for lack of probable cause, and a jury trial was held.

During trial, the State attempted to elicit hearsay testimony from Officer Alexander. The trial court allowed Officer Alexander to be questioned outside the presence of the jury and heard argument on Walker's hearsay objection. Officer Alexander described Blackwell as distraught and "somewhat excited," tr. at 326; Blackwell talked loudly but did not yell; and Officer Alexander could tell from Blackwell's voice that some event had recently occurred. Officer Alexander testified that in response to a question about the identity of the burglars, Blackwell told him he opened the garage door and saw Walker with a television in his hands and placing it into a dark colored Neon. The trial court determined that the hearsay statement qualified under the excited utterance exception to the rule against hearsay, and the testimony was admitted over objection. Blackwell testified at trial, and he denied seeing the burglar with a television in his hands and also denied making the statement to Officer Alexander.

The jury found Walker guilty of obstruction of justice and guilty of receiving stolen property, a Class D felony, as a lesser included offense of burglary. Walker admitted to being an habitual offender. Walker received an aggregate sentence of seven years. This appeal followed.

I. Hearsay

Walker challenges the admission of hearsay testimony given by Officer Alexander. A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. Young v. State, 980 N.E.2d 412, 417 (Ind. Ct. App. 2012). A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. Id. Factual determinations related to whether a statement constitutes an excited utterance are subject to a clearly erroneous standard of review. Davenport v. State, 749 N.E.2d 1144, 1148 (Ind. 2001). However, a trial court's evidentiary ruling is reviewed de novo when it turns on a misunderstanding of a rule of evidence. Banks v. State, 839 N.E.2d 794, 796 (Ind. Ct. App. 2005).

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c).[1] Hearsay is inadmissible unless it falls under an exception provided either by law or the rules of evidence. Ind. Evidence Rule 802. One exception is made for an excited utterance, which is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Ind. Evidence. Rule 803(2). For a hearsay statement to be admitted as an excited utterance, three elements must be met: (1) a startling event, (2) a

---

[1] Subsequent to Walker's trial, an amended version of the hearsay definition took effect January 1, 2014. The current definition of hearsay is "a statement that: (1) is not made by the declarant while testifying at the trial or hearing; and (2) is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). By all appearances, the amended version remains the same in substance.

statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. Davenport, 749 N.E.2d at 1148. However, this is "not a mechanical test." Id. At bottom, the analysis turns on whether the statement was "inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications." Id. And "the heart of the inquiry is whether the statement is inherently reliable because the declarant was incapable of thoughtful reflection." Yamobi v. State, 672 N.E.2d 1344, 1346 (Ind. 1996).

Walker argues on appeal that the trial court erred by admitting Officer Alexander's hearsay testimony under the excited utterance exception. He contends Blackwell was not under extreme and ongoing stress and the length of time elapsed from the incident until the alleged statement disqualifies it from the excited utterance exception. Walker also points out that the statement was not spontaneous, but rather the product of police questioning.[2]

Walker is correct that whether a statement is made in response to questioning is one factor weighing against admissibility. This court has noted that a statement made in response to an inquiry "increases the likelihood that the statements were not made under the stress of the startling event." Bryant v. State, 802 N.E.2d 486, 496 (Ind. Ct. App. 2004), trans. denied. That said, prior questioning does not preclude application of the excited utterance exception. "A declaration does not lack spontaneity simply because it was an answer to a question. Whether given in response to a question or not, the

---

[2] Walker also claims that Blackwell's statement was testimonial and asserts that its admission violated Walker's rights under the Confrontation Clause. This argument is without merit. Blackwell testified at trial and was available for cross-examination. Thus, Walker's confrontation rights were not violated. See Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The [Confrontation] Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.") (citations omitted).

6

statement must be unrehearsed and made while still under the stress of excitement from the startling event." Yamobi, 672 N.E.2d at 1346.

In this case, however, we believe the amount of time elapsed and the nature of the startling event are of greater importance to our analysis. Although not necessarily dispositive, "[a] long period of time reduces the likelihood that a statement is made without deliberate thought and under the stress of excitement of an event." Jenkins v. State, 725 N.E.2d 66, 68 (Ind. 2000). The Indiana Supreme Court has noted that there is "no rigid test of elapsed time," but it has "found the exception available one half-hour after the 'startling event' only under extreme and continuing stress." Davenport, 749 N.E.2d at 1149 (citing Yamobi, 672 N.E.2d at 1346-47) (emphasis added).

The exact amount of time between Blackwell seeing the burglar(s) drive away and speaking to Officer Alexander is unknown. It was approximately nineteen minutes from the time Blackwell called Walker's cell phone until Officer Alexander arrived on the scene. However, those nineteen minutes do not include the time Blackwell spent searching the house, discovering that a television was missing, returning outside to find the cell phone, and deciding to call Walker's phone number—all of which occurred after the startling event. We cannot say with certainty the total amount of time elapsed, but it is safe to assume that it was at least approaching—if not in excess of—the thirty minute benchmark endorsed by our supreme court.

The startling event at issue in this case is the sight of a burglar speeding away from the declarant's grandfather's house. We agree with the trial court that this could indeed be a startling event providing the basis for an excited utterance. That said, as "startling events" go, this one is relatively mild. Cf. Id. at 1148 (five-year-old declarant's

7

statement made minutes after finding his mother's dead body); Yamobi, 672 N.E.2d at 1347 (declarant was the victim of a gunshot wound); Boatner v. State, 934 N.E.2d 184, 187 (Ind. Ct. App. 2010) (declarant was the victim of domestic battery); Purvis v. State, 829 N.E.2d 572, 581-82 (Ind. Ct. App. 2005) (declarant was the victim of child molestation), trans. denied.

Furthermore, Officer Alexander described Blackwell's demeanor as distraught and "somewhat excited," Blackwell spoke loudly, and Officer Alexander could tell some event had occurred. But Blackwell was far from hysterical. He was not crying, screaming, or in a state of shock; nor was he injured, bleeding, or in any sort of pain. The presence or absence of such indicators of stress are crucial to our analysis, especially when a significant amount of time has passed since the startling event. See Fowler v. State, 829 N.E.2d 459, 463-64 (Ind. 2005) (considering declarant was in pain, crying, bleeding, and having trouble breathing when holding statements admissible as excited utterances), cert. denied, 547 U.S. 1193 (2006), abrogated on other grounds by Giles v. California, 554 U.S. 353 (2008); Young, 980 N.E.2d at 421-22 (stating that factors to consider include whether "declarant is crying, appears to be under stress, is injured, or is exhibiting other physical or psychological conditions that indicate stress" and holding declarant's statement inadmissible when she was injured and crying when firefighters initially found her but had stopped crying and been treated during the hour before her statement to police). Here, there is an obvious absence of the "extreme and continuing stress" our supreme court in Davenport emphasized may be necessary to permit an excited utterance after a lapse of time as lengthy as thirty minutes.

8

For the sake of comparison, we reflect upon cases we believe exemplify the extreme and continuing stress justifying admission as an excited utterance one half-hour after a startling event. In Yamobi, the declarant—whose statement was deemed admissible—was the victim of a gunshot and was immobilized sometime between thirty minutes to an hour from the shooting until the statement. 672 N.E.2d at 1347. The gunshot victim was found lying on his back, bleeding, and in pain, and the victim had not moved from the time he was shot. Id. In Goolsby v. State, our supreme court held statements made by a five-year-old declarant forty-five minutes after the event were admissible under the excited utterance exception. 517 N.E.2d 54, 60 (Ind. 1987). The child was woken in the middle of the night, beaten by the defendant, and watched the defendant beat and stab his mother. Id. The officer who took the child's statement noted that the child "'was very excitable, he was rambling on about what happened' . . . [and he] had red marks, bruises and blotches on his face and . . . had urinated in his pants." Id. And in Williams v. State, excited utterances were made to police within one hour after the declarant had been shot several times and was found unconscious at the scene of the shooting. 782 N.E.2d 1039, 1046 (Ind. Ct. App. 2003), trans. denied. The statements were made while the declarant was in the emergency room with chest tubes and IVs in his body. The startling events and resulting stress levels in Yamobi, Goolsby, and Williams are a far cry from those present in this case.

Moreover, the evidence indicates that Blackwell was capable of rational thought and reflection prior to his conversation with Officer Alexander. Blackwell saw a vehicle he believed belonged to Walker, searched the residence for missing items, found a cell phone outside, and was able to put two and two together and call Walker's phone number

9

when he discovered the cell phone. He also called his uncle, who was a member of law enforcement, before calling the police. These actions establish at least some capacity for rational and reflective thought immediately after the event. See Bryant, 802 N.E.2d at 496 (stating "it is apparent that [the declarant] was capable of rational thought because the evidence also established that [she] attempted to call other members of her family to pick her up after the alleged incident had occurred.").

Blackwell's actions immediately after the burglary, the nature of the startling event, and the fact that Blackwell had an additional nineteen minutes to compose himself after calling Walker's phone until the police arrived, all weigh against application of the excited utterance exception. Additionally, while establishing at least a marginally heightened state of excitement, Officer Alexander's description of Blackwell's demeanor falls far short of establishing the extreme and continuing stress needed when faced with a significant lapse of time between the startling event and the statement in question. The degree of lingering stress described by Officer Alexander is not the sort that would deprive Blackwell of his capacity for reflective thought under the circumstances. Therefore, we hold Officer Alexander's hearsay testimony was not admissible under the excited utterance exception.

We would be remiss not to briefly address the State's arguments regarding application of the excited utterance exception in this case. A lion's share of the State's brief is spent leaning on the standard of review, and the State urges us to give deference to the trial court's finding that a startling event occurred and that Blackwell was in an excited state when the statement was given. We take the trial court's factual findings at face value, and our analysis presumes a startling event occurred and that there was at

least some lingering stress when Officer Alexander questioned Blackwell. Our decision, however, emphasizes the principle that fulfillment of the excited utterance elements is not a mechanical exercise, and the elements are not to be considered in isolation. The nature of the startling event, the degree of stress at the time of the statement, and the amount of elapsed time must be considered as a whole. The opportunity for and likelihood of thoughtful reflection—the heart of our inquiry—is determined by a confluence of these factors. Suffice it to say, the excited utterance exception is not meant to give admission to hearsay statements under the circumstances in this case. Here, the trial court's finding that an excited utterance occurred stretches the exception's reach beyond its intended grasp.

## II. Harmless Error

Even where a trial court commits error in admitting evidence, a defendant's conviction will not be reversed if the error was harmless. Cooley v. State, 682 N.E.2d 1277, 1282 (Ind. 1997). Errors in the admission of evidence, including hearsay, should be disregarded unless they impact the substantial rights of a party. Montgomery v. State, 694 N.E.2d 1137, 1140 (Ind. 1998). "In determining whether an evidentiary ruling has affected an appellant's substantial rights, we assess the probable impact of the evidence on the jury." Id. Harmless error exists if a defendant's conviction is "supported by substantial independent evidence of guilt satisfying the reviewing court there is no substantial likelihood the challenged evidence contributed to the conviction." Turner v. State, 953 N.E.2d 1039, 1059 (Ind. 2011). Improper admission of hearsay is not grounds for reversal where it is merely cumulative of other evidence. Montgomery, 694 N.E.2d at 1140.

The hearsay testimony at issue was direct evidence that Walker possessed the stolen television, and that testimony was not cumulative of other evidence admitted at trial. However, we believe that the remaining combined evidence presented at trial is sufficient to create an inference of guilt beyond a reasonable doubt.

There was ample evidence, both direct and circumstantial, placing Walker at the scene of the burglary. Walker's cell phone was found at the scene along with a shoe print that matched shoes worn by Walker on the night of the burglary. Additionally, statements by Blackwell identifying Walker at the scene were admitted under Indiana Evidence Rule 801(d)(1)(C).

Moreover, we believe certain actions taken by Walker after being contacted by police would allow the jury to draw an inference of guilt. First, from Walker's act of "accidentally" melting the bottoms of his shoes after he told police to obtain a warrant, the jury could quite reasonably believe Walker was attempting to destroy evidence of his guilt. Second, Walker stated upon his arrest: "Yeah, you didn't find no fuckin' TV so you have to pin some other shit on me." Tr. at 369. Yet at that time, the police had not told Walker that a television had been stolen from the Sandifar residence.

Finally, testimony was given that Walker apologized to both Westin and Gary Sandifar after the burglary. Specifically, Gary testified that Walker admitted to taking the television and that he "wasn't the only one involved in this." Tr. at 234.

Together, the evidence recounted above is substantial independent evidence of Walker's guilt. Although admission of Officer Alexander's hearsay testimony as an excited utterance was error, it was harmless error in this instance.

12

## Conclusion

We conclude that Officer Alexander's hearsay testimony did not qualify as an excited utterance and thus was improperly admitted into evidence. However, we affirm Walker's conviction, concluding that the admission of that testimony was harmless error.

Affirmed.

BARNES, J., and BROWN, J., concur.