## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 07 2020, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Aaron J. Stoll
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Travon R. Fincher, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 7, 2020 <br><br> Court of Appeals Case No. 20A-CR-813 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause No. 02D05-1809-MR-16 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Travon R. Fincher (Fincher), appeals his conviction for murder, a felony, Indiana Code § 35-42-1-1; two Counts of attempted murder, Level 1 felonies, I.C. §§ 35-42-1-1; 35-41-5-1; and his adjudication for use-of-firearm, I.C. § 35-50-2-11.

We affirm.

# ISSUES

Fincher presents this court with three issues, which we restate as:

1. Whether the trial court abused its discretion by denying Fincher's counsel an opportunity to make an offer of proof;

2. Whether Fincher's constitutional rights to confrontation were violated by the admission of an unavailable witness' prior deposition testimony; and

3. Whether the trial court abused its discretion by admitting a witness' excited utterance.

# FACTS AND PROCEDURAL HISTORY

In August 2018, Rachel Burtz (Burtz) and Jason Sandy (Sandy) were living together in Fort Wayne, Indiana. Sandy's close friend, Rick Pelmear (Pelmear), frequently visited the residence and the three would spend time together. Burtz and Sandy had met Fincher after they started living together because Fincher's uncle lived nearby.

On August 30, 2018, Burtz returned home from work at approximately 4:00 p.m. She went to the grocery store together with Sandy and Pelmear to purchase food. After returning home and commencing preparations for dinner, Burtz noticed that Fincher was at the house, sitting in the living room with Pelmear and Sandy. Over the next couple of hours, Burtz attended to the grill and was in and out of the house. At one point, Burtz returned to the living room after checking on the french fries cooking in the oven when Fincher exited the bathroom. Upon walking into the living room, Fincher pulled out a handgun and fired on Burtz, Sandy, and Pelmear. Burtz was shot three times, with one shot lodged in her abdomen and two shots in her upper right thigh. Sandy was shot in the face, arm, and neck, while Pelmear was shot in the lungs, bowel, pancreas, and abdomen. Pelmear attempted to escape the house, but collapsed outside and was dead by the time emergency responders arrived. Burtz and Sandy survived.

Burtz, laying on the couch and pretending to be dead, heard Fincher rifle through Sandy's pockets and going through the kitchen cabinets where Sandy kept marijuana. After Fincher left the house, Burtz called 911. When officers arrived at the house and attended to Sandy, Sandy, without being questioned, stated "Tray shot him." (Transcript Vol. III, p. 115). Sandy would remain at the hospital for a month and required reconstructive surgery to his face. During the first three days, Sandy was in a coma and on life support. On the fourth day, Sandy was in and out of consciousness, but on the fifth day, Sandy, who could not talk due to a breathing tube, requested pen and paper. He wrote

"Tray tried to kill me[.] He rolled me over and took all my money so I just layed [sic] still otherwise he would have killed me." (Tr. Vol. III, p. 44; Exh. 17).

[7] On September 10, 2018, the State filed an Information, charging Fincher with murder and two Counts of aggravated battery as Level 3 felonies. The State also filed a use-of-a-firearm enhancement. The State later amended the charges, changing the two Counts of aggravated battery to two Counts of attempted murder as Level 1 felonies. On February 25, 2020, a jury trial commenced. During *voir dire*, the State alerted the trial court that Sandy was in custody but refused to testify in this cause. When the trial court questioned Sandy, he responded that his intent was to refuse to answer questions as he "was not here to judge anyone." (Tr. Vol. II, p. 164). After being questioned by Fincher and the State, the trial court found Sandy in contempt and declared him to be an unavailable witness. At that point the State, over Fincher's objection, moved to have Sandy's previously-taken deposition admitted and read at trial. Fincher requested to question Sandy as to "when he was testifying at his deposition on March 15th if those questions – or if those answers – if the answers he provided were true and accurate." (Tr. Vol. II, pp. 168-69). The State objected to the question on relevancy grounds. The trial court denied the question, concluding that "the focus of the test is not upon whether the trial court believes the witness is telling the truth, but rather upon the process by which the prior statement was obtained. Based on that language and my familiarity with the processes of deposition conducted in this community, I would find it to be reliable." (Tr.

Vol. II, pp. 169-70). At the close of the evidence, Fincher was found guilty as charged. On March 20, 2020, the trial court imposed fifty-five years for the murder charge, and thirty years each for the two attempted murder charges, with sentences to run consecutively. The trial court imposed a ten-year enhanced sentence for the use-of-a-firearm charge, to run consecutively to the other charges. Fincher's aggregate sentence amounted to 125 years.

[8] Fincher now appeals. Additional facts will be provided if necessary.

## DISCUSSION AND DECISION

### I. *Offer of Proof*

[9] Fincher first contends that the trial court abused its discretion by denying his request to make an offer of proof by questioning Sandy about his deposition after he expressed his intent not to answer any questions. We review a trial court's decision to deny an offer of proof for an abuse of discretion. *Bedolla v. State*, 123 N.E.3d 661, 666 (Ind. 2019). "An offer to prove is the method by which counsel places before the trial court (and ultimately the reviewing court) the evidence he or she wishes to present, to allow the court to determine the relevancy and admissibility of the proposed testimony." *Arhelger v. State*, 714 N.E.2d 659, 664 (Ind. Ct. App. 1999). A trial court's decision in these matters should be upset only when the court reached an erroneous conclusion and judgment, one clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom." *Bedolla*, 123 N.E.3d at 666. Under this deferential standard, we

will second-guess the lower court only when it responds to that factual context in an unreasonable manner. *Id.*

[10] Offers of proof help assure parties receive fundamental fairness at both the trial and appellate levels. *Id*. at 667. When a party asks to make a legitimate offer of proof, the trial court should grant that request. *Id*. Of course, as part of its duty to impartially control a proceeding, the trial court may exercise reasonable discretion in determining the timing and extent of an offer of proof. *Id*. Nevertheless, absent clear abuse by a party, offers of proof should be allowed. *Id*.

[11] An offer of proof consists of three parts: (1) the substance of the evidence, (2) an explanation of its relevance, and (3) the proposed grounds for its admissibility. *Duso v. State*, 866 N.E.2d 321, 324 (Ind. Ct. App. 2007). Here, the trial court declared Sandy to be unavailable as a witness at trial after he expressed his refusal to answer any questions. When the State moved to admit Sandy's deposition at the trial proceeding, Fincher's counsel requested to make an offer of proof, and to question Sandy as to the veracity of his answers at the deposition. It is well-settled that a prior deposition testimony is admissible when the trial court finds (1) the witness is unavailable and (2) the statement to be used bears sufficient indicia of reliability. *State v. Owings*, 622 N.E.2d 948, 952 (Ind. 1993). These indicia of reliability are generally provided when a defendant either cross-examined the unavailable witness whose prior testimony the State seeks to admit or had the opportunity to do so. *Berkman v. State,* 976 N.E.2d 68, 77 (Ind. Ct. App. 2012). A deposition which comports with the

general principals of cross-examination provides sufficient indicia of reliability. *Owings*, 622 N.E. 2d at 952. The focus of the test is not upon whether the trial court believes the witness to be telling the truth, but rather upon the process by which the prior statement was obtained. *Id.* The evidence reflects that during the deposition Sandy was under oath and cross-examined by Fincher's counsel. The argument that a different attorney represented Fincher at the deposition is without merit as the attorney conducted a vigorous cross-examination—the reliability test does not require the same attorney to question the witness, merely that cross-examination happened or an opportunity to do so presented itself. Accordingly, as Fincher's request to question Sandy about his veracity at the deposition is irrelevant to evaluate the deposition's reliability, we conclude that the trial court exercised reasonable discretion by limiting the scope of the offer of proof and denying the request.

[12] Moreover, we note that even if the trial court had allowed Fincher to make an offer of proof by questioning Sandy, the trial court could not have compelled Sandy to answer Fincher's questions beyond basic identifying information. *See, e.g., Pitman v. State*, 749 N.E.2d 557, 561 (Ind. Ct. App. 2001) (probationer was not entitled to invoke the Fifth Amendment privilege with regard to basic identifying information and any disclosures which were necessary to effectively monitor her probation), *reh'g denied, trans. denied*. We conclude that the trial court did not abuse its discretion.

## II. *Constitutional Rights*

[13]     Next, Fincher contends that the admission of Sandy's prior deposition during the trial proceedings violated his right to confrontation under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution.

[14]     When a claim of error in the admission of evidence is properly preserved, this court will review it for an abuse of discretion. *Nicholson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012). But when a defendant fails to properly preserve such a claim, it is waived, and reversal can only occur in the presence of fundamental error. *Hardley v. State*, 905 N.E.2d 399, 402 (Ind. 2009). The bar for proving fundamental error is extraordinarily high. *Id*. The doctrine is meant to cure the most egregious and blatant trial errors, not to provide a second bite at the apple for defense counsel who ignorantly, carelessly, or strategically fails to preserve an error. *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). Even an error that is prejudicial or that implicates a constitutional right is not itself sufficient to constitute fundamental error. *Hollingsworth v. State*, 987 N.E.2d 1096, 1099 (Ind. Ct. App. 2013). Rather, a fundamental error is such a gross error that it renders any possibility of a fair trial impossible. *Id.* at 1098. Such error only occurs when any competent trial court judge would be required to intervene to prevent the denial of a fair trial. *Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012).

[15]     After the State alerted the trial court about Sandy's refusal to testify and the trial court characterized Sandy as an unavailable witness, the State proceeded to summarize the deposition proceeding to the trial court, after which the trial court was satisfied that the reliability test to admit Sandy's deposition at trial

was met. Fincher's counsel asked the trial court to show an objection for the record because Sandy's appearance had been brought before the court by a writ of *habeas ad testificandum* as he was in federal custody at the time of trial and not by a subpoena. Fincher's counsel then added:

> And secondly, offer of proof. I – I would like to be able to request, to question [Sandy] concerning the truthfulness of his testimony at his deposition for the purpose of challenging the admission of that deposition.

(Tr. Vol. II, p. 170). The trial court overruled the objection and denied the request for offer of proof. During the trial, the State offered Sandy's deposition testimony by having an investigator read Sandy's answers while the prosecutor read the questions. At the onset of the reading of the deposition, Fincher's counsel made his contemporaneous objection, incorporating the prior arguments but adding arguments based on the "due process clause [and] confrontation clause, both the United States and Indiana Constitution." (Tr. Vol. II, p. 235). After Fincher made his contemporaneous objection, the trial court asked both counsels to approach the bench and informed Fincher that he was adding new grounds that had not been previously argued. Fincher responded that "[w]ell it – well if that's the [c]ourt's ruling. But that's our argument." (Tr. Vol. II, p. 236). Fincher did not request a further hearing, or present either argument, or evidence on his new constitutional claims.

[16] We find that Fincher's objection was insufficient to preserve his constitutional claims. When a defendant does not properly bring an objection to the trial

court's attention so that the trial court may rule on it at the appropriate time, he is deemed to have waived that possible error. *Ingram v. State*, 547 N.E.2d 823, 829 (Ind. 1989). Moreover, grounds for objection must be specific, and any grounds not raised in the trial court are not available on appeal. *Id*. As Fincher merely referred to his constitutional right to confrontation in passing and without any further specificity such as applicable facts or case law, we find that he has waived the issue for our review.

### III. *Excited Utterance*

[17] Lastly, Fincher contends that the trial court abused its discretion by admitting Sandy's note, written in the hospital after regaining consciousness and implicating Fincher, as an excited utterance. He maintains that because the statement was uttered six days after the attack and three days after coming out of the coma, Sandy was no longer under the stress or excitement of the event and therefore the statement cannot be characterized as an excited utterance. The trial court's decision to admit the evidence is reviewed for an abuse of discretion. *Nicholson*, 963 N.E. 2d at 1099.

[18] Sandy's written statement, "Tray tried to kill me[.] He rolled me over and took all my money so I just layed [sic] still otherwise he would have killed me," was admitted pursuant to Indiana Evidence Rule 803(2), which allows for admission of hearsay when the out-of-court statement relates "to a startling event or condition, made while the declarant was under the stress of excitement caused by the event or condition." (Tr. Vol. III, p. 44; Exh. 17). Thus, for a

hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. *Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996). This is not a mechanical test. Rather, the decision turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications. *Id.* "The lapse of time is not dispositive," and "[t]he heart of the inquiry is whether the declarant was incapable of thoughtful reflection." *Stinson v. State*, 126 N.E.3d 915, 920-21 (Ind. Ct. App. 2019).

[19] After being shot by Fincher, Sandy was rushed to the hospital where he required constructive surgery to his face and was in a three-day coma. While a day passed between him coming out of the coma and writing the note implicating Fincher, Sandy was in and out of consciousness on the day before the note was written. Once he finally regained the strength and lucidity to communicate, Sandy, who could not speak due to a breathing tube, requested pen and paper and identified Fincher as the culprit.

[20] While we agree with Fincher that several days passed between the attack and Sandy's statement, we also recognize that this event is of unimaginable magnitude: being shot in the face, being in a coma and on life support, and being unable to verbally communicate. Under these circumstances, we highly doubt that Sandy had the ability to engage in the thoughtful reflection required to fabricate his allegation. *See D.B.G. v. State*, 833 N.E.2d 519, 527 (Ind. Ct.

App. 2005) (the magnitude of the exciting event relates to the length of time that an individual can still be under the stress of the event). Accordingly, the trial court did not abuse its discretion by admitting Sandy's handwritten note under the excited utterance exception to the hearsay rule.

Nevertheless, even if the trial court abused its discretion in admitting the note, the error was harmless as the evidence was cumulative. Prior to being admitted to the hospital and writing the note, Sandy had already informed the officers responding to the crime scene that "Tray shot him." (Tr. Vol. III, p. 115). *See Hunter v. State*, 72 N.E. 3d 928, 932 (Ind. Ct. App. 2017) (The improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of other evidence before the trier of fact), *trans. denied*. Accordingly, even if the trial court had made an error—which it did not—the error was harmless and we decline to reverse the decision.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not abuse its discretion by denying Fincher's counsel an opportunity to make an offer of proof; Fincher waived our review of whether his constitutional right to confrontation was violated; and the trial court properly admitted a witness' excited utterance.

Affirmed.

May, J. and Altice, J. concur