Cecil JENKINS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9903–CR–200.

Supreme Court of Indiana.

March 21, 2000

Janice L. Stevens, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Michael McLaughlin, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Cecil Jenkins was convicted of kidnapping, rape, and of being a habitual offender. He was sentenced to consecutive terms of fifty years for kidnapping and fifty years for rape enhanced by thirty years for being a habitual offender. In this direct appeal Jenkins contends that the trial court erred by not allowing his statements to the police to be admitted at trial and that the State impermissibly commented on his failure to testify. We affirm the judgment of the trial court.

## Factual and Procedural Background

On April 6, 1998, as D.R. was pumping gas, Jenkins entered the passenger side of her car. He grabbed D.R. by her hair, put an object into her side, and ordered her to drive. After reaching an abandoned building, Jenkins forced D.R. into a room and removed her clothes. When D.R. objected, Jenkins covered her mouth and nose with his hand, choked her, and then raped her.

Jenkins asked D.R. for money and choked her again until he found money in her purse. They returned to her car and Jenkins forced D.R. to drive to another abandoned location, where according to D.R., another rape occurred. Jenkins then forced D.R. to drive to a bridge and pull off the road where he exited the car and let D.R. drive away.

D.R. reported the attack to the police. Based on D.R.'s description and Jenkins' location near the crime scene later that evening, Jenkins was identified as the assailant, arrested, and taken to the police station for questioning. During the course of his interview, Jenkins admitted to having sex with D.R., but claimed that the encounter was consensual. Jenkins was charged with kidnapping, two counts of rape, criminal confinement, robbery, and being a habitual offender. He did not testify at trial. The jury found Jenkins guilty of kidnapping, rape, and being a habitual offender, acquitted him of the rob-

bery charge, and was unable to reach a verdict as to the second rape or criminal confinement.

## I. Hearsay

Jenkins claims that the trial court erred by refusing to permit an interrogating officer to testify to some statements Jenkins made to police. The State responds that the officer's account of these statements was hearsay and, as such, was inadmissible. At trial Detective Cahill testified that he interviewed Jenkins on the night of the rape. After Cahill testified that Jenkins stated that the encounter was consensual, Cahill's account of all other statements by Jenkins during the interview was excluded as hearsay. In his offer of proof, Jenkins contended that his statements to Cahill were admissible under the hearsay exceptions for present sense impression, excited utterance, state of mind, and statements against interest. On appeal, Jenkins contends only that the statements were admissible as excited utterances pursuant to Indiana Evidence Rule 803(2). Neither at trial nor on appeal did Jenkins make any claim that the omitted statements were relevant to provide a complete account of the matters addressed in the admitted testimony. *Cf. Sweeney v. State*, 704 N.E.2d 86, 110–11 (Ind.1998).

■ Hearsay is an out of court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). It is inadmissible unless it falls under an exception. Evid. R. 802. Among the exceptions to the hearsay rule is: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2). Determining whether a statement constitutes an excited utterance is within the trial court's discretion and its ruling will be reversed only for an abuse of that discretion. *See Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind.1996).

■ For a hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. *Id.* This is not a mechanical test. It turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications. *Id.*; 13 Robert Lowell Miller, Jr., *Indiana Practice* § 803.102 (2d ed.1995).

■ In this case Jenkins was picked up by the police around 2:00 a.m. and then identified by D.R. He was subsequently arrested and taken to the police station where he waited until after 3:30 a.m. for Detective Cahill to arrive. Cahill informed Jenkins of the charges against him and talked to him for ten to fifteen minutes before taking a taped statement that lasted from 4:29 a.m. to 4:54 a.m. Jenkins claims that the circumstances surrounding his arrest and being told of the charges against him were startling events that rendered him incapable of reflective thought during his subsequent police interview.

■ Being arrested and charged with rape and robbery may conceivably be startling events in some circumstances. Here, however, Jenkins was arrested more than two hours before giving his statements to the police. During this time he was read his rights, was escorted to the police station, and was informed by Cahill of the nature of the charges against him. Although the amount of time that passes between the startling event and the statement is not necessarily dispositive, it is one factor to consider when determining the admissibility of statements. *See Yamobi*, 672 N.E.2d at 1346–47 (statement from victim identifying shooter was an excited utterance where victim lay dying for one hour before statement). A long period of time reduces the likelihood that a statement is made without deliberate thought and under the stress of excitement of an event.

Here, unlike *Yamobi*, there was no continuing trauma and immobilization that rendered the declarant more reliable. To the contrary, two hours had expired between the arrest and Jenkins' statement. During that time Cahill talked to Jenkins for approximately fifteen minutes after informing him of the charges against him and before taking his statement. Jenkins had ample time free of any ongoing effects of the arrest and his learning of the charges against him to reflect and compose a statement. The trial court was well within its discretion in finding the statements inadmissible at trial.

## II. Failure to Testify

Jenkins also claims that the prosecutor twice commented on his failure to testify in violation of his Fifth Amendment privilege against self-incrimination.

The first incident occurred during the defense's cross examination of Detective Cahill concerning Jenkins' statements in his police interview. The prosecutor objected to the effort to elicit testimony of Jenkins' statement to police discussed in Part I. In the course of that objection, the prosecutor stated, "In addition, *State of Indiana v. Stuckey v. State* says that a defendant who does not testify cannot introduce exculpatory or self-serving statements that are made outside of Court in Court through the State's case to enhance the credibility of his client without him taking the stand, Your Honor." Jenkins moved for a mistrial. A mistrial was denied, but the trial court offered to admonish the jury and told the prosecutor not to mention Jenkins' failure to testify again.

The second reference to Jenkins' silence took place during the State's rebuttal closing argument. The prosecutor stated:

There's been a lot of discussion and a lot of argument and objections about the Defendant's statement and at this time I'm going to explain to you a little bit more because the Defendant has told you on cross examination—or, I'm sorry, on his closing argument that the State is trying hard not to get in the statement.

Why? To divert your attention away? No, ladies and gentlemen. We are not the only party that can present evidence in this case. The Defendant has the absolute right not to take the stand. It's guaranteed by the Constitution of United States. He does not have to get up there and tell you a thing or say anything. But him to—the defense attorney to tell you that we're misleading you or we're trying to keep it out, that is misleading, ladies and gentlemen.

Jenkins again moved for a mistrial, which was again denied. The trial court admonished the jury that "the Defendant does not have to testify. He doesn't and it's not to be mentioned, not to be considered, not to be discussed."

 The Fifth Amendment prohibits compelling a defendant to testify against himself. *See* U.S. Const. amend. 5. The United States Supreme Court has interpreted this amendment to bar prosecutorial comment on a defendant's silence. *See Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). As this Court stated in *Moore v. State*, 669 N.E.2d 733, 739 (Ind.1996), a Fifth Amendment violation occurs "when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." In *Moore*, the prosecutor stated that the defendant "chose to put on a case in this, he didn't choose to testify which is his right, and he certainly doesn't, isn't compelled to testify...." *Id.* at 735. This Court concluded that "a reasonable jury could not have interpreted the statement as a suggestion to infer guilt from Moore's silence." *Id.* at 739.

 Jenkins invited the prosecutor's first comment. In response to Jenkins' repeated attempts to introduce his statements to Detective Cahill, the prosecutor told Jenkins that if he continued in the same line of questioning, the State would quote the caselaw if it becomes necessary—and the caselaw statement that a

defendant who does not testify cannot introduce exculpatory statements outside of court in order to enhance his credibility at trial, and I'm going to quote that law in front of the jury if [defense counsel] forces me by trying to get into the statements.

Defense counsel responded, "Be my guest."

█ The second comment followed defense counsel's suggestion in closing argument that the State was afraid to "let [the jury] hear what Cecil Jenkins said to [the State]" and was attempting to conceal evidence. As in *Moore*, neither statement invited the jury to draw an adverse inference from Jenkins' silence. Both were in response to tactical moves by the defense. A prompt admonishment was offered as to the first and was given as to the second. Under these circumstances, the trial court was within its discretion in determining that these comments did not warrant the extreme sanction of a mistrial. *See Kent v. State*, 675 N.E.2d 332, 335 (Ind.1996) ("The trial court's ruling on a mistrial is afforded great deference.... A mistrial is an extreme remedy invoked only when no other measure can rectify the situation."); *Schlomer v. State*, 580 N.E.2d 950, 955 (Ind.1991).

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON, SULLIVAN and RUCKER, JJ., concur.