# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**DANIELLE L. GREGORY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GABRIEL MCQUAY,                          )
                                         )
    Appellant-Defendant,             )
                                         )
       vs.                        )    No. 49A02-1311-CR-954
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.              )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Stanley E. Kroh, Judge Pro Tempore
Cause No. 49G16-1307-FD-48148

**June 12, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Gabriel McQuay appeals his convictions for criminal confinement, as a Class D felony, and battery, as a Class A misdemeanor, following a bench trial. McQuay raises a single issue for our review, which we restate as whether the trial court abused its discretion when it allowed a police officer to testify to the victim's out-of-court statements made to the officer. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In the evening of June 5, 2013, Jerry O'Connor and his wife were driving in Indianapolis when they observed a car parked next to a curb with its door open and two people standing nearby. Because the O'Connors' car windows were down, they heard a man and a woman arguing and yelling at each other. Jerry then saw the man, whom he later identified as McQuay, "push" the woman, R.S., into the car while "she was yelling and screaming that he was hurting her." Transcript at 17. In particular, Jerry heard R.S. say, "he's going to kill me." Id. at 18. Jerry pulled his vehicle over about twenty-five yards away from the couple, got out of his car, and "yelled for him to stop hurting her." Id. at 19.

Other people starting taking notice of the events, including Jill Andry. At the same time and location she observed a car "pulled over to the side with a man punching [a woman]." Id. at 37. Jill did not "get a good look at the man" but heard the woman "yelling 'he's trying to kill me, he's trying to kill me, he took my purse' . . . over and over." Id. at 37-38. Jill called 9-1-1, and she observed the man "t[ake] off running to . . . an apartment complex" nearby. Id. at 38.

Jerry also observed McQuay go to the nearby apartment complex. Once McQuay had left the scene, Jerry approached the vehicle to check on R.S. Jerry observed that "she had some red marks on her," that "she was hysterical," and that she was visibly "shaken." Id. at 22-23.

Indianapolis Metropolitan Police Department ("IMPD") Officer Travis Williams arrived shortly thereafter. He approached R.S. and observed that she was "visibly upset. She was shaking. She was crying and she was speaking in very rapid movements as if she had been in some kind of struggle." Id. at 43. R.S. identified herself to Officer Williams, and he then verified her identity with IMPD. Officer Williams then asked R.S. who her attacker was, and she identified McQuay. R.S. informed Officer Williams that McQuay had fled "through" a nearby apartment complex, but Officer Williams did not receive a tenant's consent to search the area and he did not pursue a search warrant. Id. at 72.

On July 24, 2013, the State charged McQuay with criminal confinement, as a Class D felony; domestic battery, as a Class A misdemeanor; and battery, as a Class A misdemeanor. At the ensuing bench trial, Jerry and Jill testified to their observations and, over McQuay's objection, Officer Williams testified that R.S. had identified herself and McQuay to him during the course of his investigation. The court found McQuay guilty of criminal confinement, as a Class D felony, and battery, as a Class A misdemeanor. The court then entered its judgment of conviction and sentence. This appeal ensued.

## DISCUSSION AND DECISION

On appeal, McQuay asserts that the trial court abused its discretion when it admitted into evidence Officer Williams' testimony regarding R.S.'s out-of-court identification of herself and McQuay to Officer Williams. In particular, McQuay asserts that Officer Williams' testimony was inadmissible hearsay and that the admission of this testimony violated his Sixth Amendment right to confront a witness.[1] Our standard of review of a trial court's admission of evidence is an abuse of discretion. Speybroeck v. State, 875 N.E.2d 813, 818 (Ind. Ct. App. 2007). A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court misapplies the law. See id.

Officer Williams' testimony that R.S. identified herself and McQuay to him at the scene was not inadmissible hearsay. As our Supreme Court has explained:

> Hearsay is an out of court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). It is inadmissible unless it falls under an exception. Evid. R. 802. Among the exceptions to the hearsay rule is: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2). Determining whether a statement constitutes an excited utterance is within the trial court's discretion and its ruling will be reversed only for an abuse of that discretion. See Yamobi v. State, 672 N.E.2d 1344, 1346 (Ind. 1996).
>
> For a hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. Id. This is not a mechanical test. It turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate

---

[1] McQuay makes passing reference to Article 1, Section 13 of the Indiana Constitution, see Appellant's Br. at 7, but McQuay in no way supports these references with cogent reasoning. As such, any attempt by McQuay to raise an independent argument on appeal under Article 1, Section 13 has been waived. See Ind. Appellate Rule 46(A)(8)(a).

4

falsifications. Id.; 13 Robert Lowell Miller, Jr., Indiana Practice § 803.102 (2d ed. 1995).

Jenkins v. State, 725 N.E.2d 66, 68 (Ind. 2000).

Here, the State's evidence demonstrates that R.S.'s statements identifying herself and McQuay to Officer Williams at the scene were excited utterances and, therefore, admissible statements. Jerry and Jill testified that they observed McQuay attacking R.S., which was a startling event for R.S. Jerry and Officer Williams testified that, immediately following the startling event, R.S. was "hysterical," "shaken," "visibly upset," "crying," and "speaking in very rapid movements." Transcript at 22-23, 43. Thus, R.S.'s statements to Officer Williams were made "while under the stress of excitement caused by the event." See Jenkins, 725 N.E.2d at 68. And R.S.'s identification of herself and McQuay relates to McQuay's attack on her.[2] Accordingly, we cannot say that the trial court abused its discretion when it concluded that R.S.'s statements to Officer Williams were excited utterances and therefore admissible pursuant to Indiana Evidence Rule 803(2). See, e.g., Sandefur v. State, 945 N.E.2d 785, 789 (Ind. Ct. App. 2011) ("[The declarant's] statement was made soon after she was injured, yelled at, and cornered. Her demeanor showed that she was still under stress, and her statement related to the startling event. Therefore, . . . [her] statement fits the excited utterance exception.").

Neither did Officer Williams' testimony deny McQuay his Sixth Amendment right to confront R.S. As we have explained:

---

[2] The State also notes that Officer Williams arrived quickly on the scene, but that is not dispositive to the analysis under Jenkins.

In 2004, the Supreme Court of the United States held that, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford v. Washington, 541 U.S. 36, 68-69 (2004). Out-of-court, testimonial statements are admissible at trial only if the declarant is unavailable to testify and the defendant has had a prior opportunity to cross examine the declarant. Id. at 59.

> "Testimonial" statements are, among other things:

> "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;" "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;" and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

> Jackson v. State, 891 N.E.2d 657, 659 (Ind. Ct. App. 2008) (discussing Crawford, 541 U.S. at 51-52), trans. denied. However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n.9. Thus, if a statement is either nontestimonial or nonhearsay, the federal Confrontation Clause will not bar its admissibility at trial.

Williams v. State, 930 N.E.2d 602, 607-08 (Ind. Ct. App. 2010) (footnotes omitted; alteration and omission original), trans. denied.

R.S.'s statements to Officer Williams at the scene were nontestimonial. As the United States Supreme Court has explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

6

Davis v. Washington, 547 U.S. 813, 822 (2006). "In making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant." Michigan v. Bryant, 131 S. Ct. 1143, 1155 (2011). "To determine whether the 'primary purpose' of an interrogation is 'to enable police assistance to meet an ongoing emergency,' which would render the resulting statements nontestimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." Id. at 1156 (citation omitted).

The crux of McQuay's argument under the Sixth Amendment is based on Officer Williams' subjective impressions at the scene. But this is not the correct analysis. Rather, we assess whether a defendant's confrontation rights have been violated objectively. Id.

> The circumstances in which an encounter occurs . . . are clearly matters of objective fact. The statements and the actions of the parties must also be objectively evaluated. That is, the relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred.

Id.

McQuay's argument aside, the facts here objectively demonstrate that the primary purpose of Officer Williams' discussion with R.S. was to enable police assistance to meet an ongoing emergency. First, Officer Williams' encounter with R.S. was at the crime scene rather than at the police station. See id. Second, because R.S.'s statements were excited utterances, they "are considered reliable because the declarant, in the excitement, presumably cannot form a falsehood." Id. at 1157. Third, because McQuay had fled the

7

scene of a violent attack and could not be located, a reasonable officer would have considered the threat to R.S., first responders, and the public ongoing. See id. at 1158. Fourth, almost immediately upon arriving at the scene Officer Williams asked R.S. her identity and the identity of her assailant. There is no evidence suggesting that Officer Williams told R.S. that he needed McQuay's identification for purposes of prosecution, and there is no reason to think that "a conversation which beg[an] as an interrogation to determine the need for emergency assistance . . . evolve[d] into testimonial statements." Id. at 1159, 1161 (quotations omitted).

Finally, Officer Williams' discussion with R.S. was informal. "[F]ormality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." Id. at 1160 (quotations omitted). Here, Officer Williams questioned R.S. in an "exposed, public area, prior to the arrival of emergency medical services, and in a disorganized fashion. All of those facts make this case distinguishable from the formal station-house interrogation in Crawford." Id.

In sum, Officer Williams responded to a call of a woman being attacked. He did not know why, where, or when the attack had occurred at the moment of his response. Nor did he know the location of the attacker or anything else about the circumstances in which the crime had occurred. His request for R.S.'s name and the identity of her attacker was information that allowed Officer Williams to "assess the situation, the threat to [his] own safety, and the possible danger to the potential victim and the public, including to allow [him] to ascertain whether [he] would be encountering a violent

8

felon." Id. at 1166 (citations and quotations omitted). In other words, Officer Williams obtained "information necessary to enable [him] to meet an ongoing emergency." Id. (quotations omitted).

Under an objective analysis, the circumstances of the encounter as well as the statements and actions of R.S. and Officer Williams indicate that the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency. As such, R.S.'s identification of herself and McQuay were not testimonial statements. The Confrontation Clause did not bar their admission at McQuay's trial.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.