**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BRIAN R. CHASTAIN**
Dillman, Chastain, Byrd, LLC
Corydon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RONALD F. GRAHAM, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  22A01-1404-CR-181 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE FLOYD SUPERIOR COURT
The Honorable Susan L. Orth, Judge
Cause No. 22D01-1309-FD-1827

**November 14, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Ronald Graham appeals his convictions for Resisting Law Enforcement,[1] a class D felony, and Criminal Recklessness,[2] a class A misdemeanor. Graham argues that the trial court erroneously admitted hearsay statements into evidence and that the trial court should have granted his motion for a mistrial after a witness refused to testify. Finding no error, we affirm.

FACTS[3]

On September 17, 2013, Floyd County Police Officer Jason Jones observed a silver Dodge Charger parked in the Fellowship Cemetery. As Officer Jones drove closer to the vehicle, a female "popped up" in the passenger's seat and the vehicle began backing out of the cemetery, away from the marked police vehicle. Tr. p. 30. Officer Jones observed a male, later identified as Graham, driving the vehicle and a female, later identified as Laura Faulkenburg, sitting in the passenger's seat as the Charger continued to pick up speed while driving backwards.

The Charger then "whipped around" so that it was driving forwards into a field and toward the entrance of the cemetery at a high rate of speed. Id. at 31-32. As the Charger reached Officer Jones's vehicle, it "took off" at a high rate of speed. Id. at 32. Officer Jones then activated his lights and siren and pursued the Charger. A fifteen-minute high-speed chase ensued, during which Officer Jones learned that the Charger

---

[1] Ind. Code § 35-44.1-3-1.

[2] Ind. Code § 35-42-2-2.

[3] We caution counsel for Graham that Indiana Appellate Rule 46(A)(6) requires that the statement of facts "shall be in narrative form and shall not be a witness by witness summary of the testimony." We hope that in future appellate litigation, counsel is mindful of this requirement.

was registered to "Donald Graham." Id. at 33-40, 47. During the chase, Graham drove at excessive speeds around curves, passed a logging truck on a curve, and ran several stop signs. At one point, Officer Jones clearly observed Graham's face. The chase ended when Graham lost control of his vehicle, which entered a field, went airborne, and landed out of view.

When Officer Jones approached the Charger on foot, the driver's door was open and Graham was gone. Faulkenburg was pinned inside the vehicle and was hysterical. She stated that she was unhurt and exited the vehicle. Faulkenburg was shaken and very upset, and when Officer Jones asked her who was driving the vehicle, she responded that it was her boyfriend, Graham. That conversation took place within one minute of Faulkenburg exiting the vehicle. Officer Jones later looked at photographs of Graham and Donald Graham, who is Graham's brother. Observing that the two men look nothing alike, Officer Jones was able to identify Graham as the driver of the Charger.

On September 20, 2013, the State charged Graham with class D felony resisting law enforcement, class A misdemeanor resisting law enforcement, and class A misdemeanor criminal recklessness. The State later added an allegation that Graham was an habitual offender and dismissed the misdemeanor resisting law enforcement charge.

At Graham's jury trial, which began on February 24, 2014, Officer Jones testified regarding Faulkenburg's identification of Graham as the driver of the vehicle. Graham objected to the testimony, arguing that it was inadmissible hearsay. The State responded

that it was admissible under the excited utterance exception to the hearsay rule, and the trial court overruled the objection and permitted Officer Jones to testify.

Faulkenburg was called to testify at the trial. She took the witness stand and stated her name, stated that Graham was the father of her child, and identified Graham in court. She then refused to answer any further questions, even after the trial court ordered her to do so. The trial court excused the jury, and Faulkenburg continued to refuse to answer any further questions. The trial court then excused her as a witness. Graham moved for a mistrial based upon Faulkenburg's refusal to testify. The trial court denied the motion, noting that Faulkenburg had refused to testify for both parties, and gave a limiting instruction to the jury.

On February 26, 2014, the jury found Graham guilty as charged, and Graham then admitted to being an habitual offender. On March 28, 2014, the trial court imposed a three-year term for resisting law enforcement and a one-year term for criminal recklessness, to be served concurrently. The trial court also enhanced the sentence by four and one-half years for the habitual offender determination, for an aggregate term of seven and one-half years. Graham now appeals.

## DISCUSSION AND DECISION

### I. Admission of Evidence

Graham first argues that the trial court erred by permitting Officer Jones to testify regarding the statement Faulkenburg made to him immediately following the vehicle

4

chase and accident. Specifically, Graham contends that the testimony constituted inadmissible hearsay.

We review a trial court's decision to admit evidence of an abuse of discretion. McQuay v. State, 10 N.E.3d 593, 596 (Ind. Ct. App. 2014). The trial court abuses its discretion only if the decision is clearly against the logic and effect of the facts and circumstances before the court or if the court misapplies the law. Id. Our Supreme Court has explained hearsay and the excited utterance exception as follows:

> Hearsay is an out of court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). It is inadmissible unless it falls under an exception. Evid. R. 802. Among the exceptions to the hearsay rule is: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Evid. R. 803(2). Determining whether a statement constitutes an excited utterance is within the trial court's discretion and its ruling will be reversed only for an abuse of that discretion.
>
> For a hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. This is not a mechanical test. It turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications.

Jenkins v. State, 725 N.E.2d 66, 68 (Ind. 2000) (some internal citations omitted).

Here, the State's evidence demonstrates that Faulkenburg's statement to Officer Jones at the scene in which she identified Graham as the driver of the vehicle was an excited utterance and, therefore, admissible. The startling event was a fifteen-minute high speed chase that ended when the vehicle in which Faulkenburg was a passenger

went airborne and crashed, with Graham then fleeing the scene. When Officer Jones first found Faulkenburg, she was still pinned in the vehicle and was upset and hysterical. After exiting the vehicle, Faulkenburg was shaken, very upset, and panicked. Within one minute of exiting the vehicle, she identified Graham as her boyfriend and the driver, which related to the startling event. Based on this evidence, we find that the excited utterance exception to the hearsay rule applies and trial court did not abuse its discretion by permitting Officer Jones to testify regarding Faulkenburg's statement.[4]

We also note that even if the admission of this evidence had been erroneous, the error would have been harmless. The admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence. VanPatten v. State, 986 N.E.2d 255, 267 (Ind. 2013). In this case, Officer Jones was able to identify Graham as the driver of the vehicle because the officer had a clear view of Graham at one point during the chase. Therefore, the testimony relating to Faulkenburg's identification of Graham as the driver was merely cumulative of evidence already in the record, and any error would have been harmless.

## II. Mistrial

Next, Graham argues that the trial court erroneously denied his motion for a mistrial after Faulkenburg refused to testify while on the witness stand. We review a

---

[4] Graham includes one sentence in his brief that he "was never permitted to cross[-]examine Laura Faulkenburg on statements she made to Officer Jones." Appellant's Br. p. 14. But he neither cites to Crawford v. Washington, 541 U.S. 36 (2004), nor further develops an argument related to his rights under the Sixth Amendment to the United States Constitution. We will not endeavor to develop the argument for him, and find that it is waived.

6

ruling on a motion for a mistrial for an abuse of discretion. Knapp v. State, 9 N.E.3d 1274, 1283 (Ind. 2014). This deferential standard of review reflects that "the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury." Schlomer v. State, 580 N.E.2d 950, 955 (Ind. 1991). Our Supreme Court has cautioned that "[m]istrial is an extreme remedy in a criminal case which should be granted only when nothing else can rectify a situation." Id.

In this case, both Graham and the State sought Faulkenburg's testimony regarding the identity of the driver and her relationship with Graham. Therefore, both Graham and the State were equally hindered by Faulkenburg's refusal to testify.

Moreover, the trial court admonished the jury as follows regarding Faulkenburg's refusal to testify:

> A witness in this case refused to answer questions. You must not consider this in any way. Do not speculate about why the witness did [not] answer questions. Do not discuss her failure to answer in your deliberations.

Tr. p. 122. This admonishment was the appropriate course of action, and the jury is presumed to have followed this admonishment. See Lucio v. State, 907 N.E.2d 1008, 1010 (Ind. 2009) (emphasizing the strong presumption that juries follow the courts' instructions and that an admonishment cures any error); Pitman v. State, 436 N.E.2d 74, 78 (Ind. 1982) (noting that it was proper for the trial court to admonish the jury following a witness's refusal to testify).

Under these circumstances, the extreme remedy of a mistrial was not necessary.

We find that the trial court did not err by denying Graham's motion for a mistrial.[5]

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.

---

[5] Graham argues that the State should have offered Faulkenburg immunity to encourage her to testify and that Faulkenburg should have been permitted to partially testify at will, answering some questions but not others. Graham offers no authority to support these arguments, and neither argument goes to whether the trial court erred by denying the motion for mistrial. Therefore, these arguments are unavailing.