## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 02 2017, 9:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marielena Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Anthony Jones,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 2, 2017

Court of Appeals Case No.
71A03-1705-CR-1136

Appeal from the St. Joseph
Superior Court

The Honorable Steven L.
Hostetler, Judge

Trial Court Cause No.
71D07-1610-CM-5281

**Baker, Judge.**

Michael Jones appeals his conviction for Class A Misdemeanor Domestic Battery,[1] arguing that the trial court erred in admitting certain evidence and that the evidence is insufficient to support the conviction. Finding no error and sufficient evidence, we affirm.

# Facts

In October 2016, Jones was dating and living with Dianne[2] Lorenzo. On October 23, 2016, Lorenzo called 911 and, while portions of the call are unintelligible, a majority of the one minute, twenty-seven second exchange is discernible:

> Operator: 911, what's the address and the emergency?
>
> Lorenzo: [states address]
>
> Operator: Okay, what's going on?
>
> Lorenzo: My husband's been beating me up, and I (unintelligible).
>
> Operator: Okay, ma'am, ma'am . . . he's still there?
>
> Lorenzo: Yes (sobbing).

---

[1] Ind. Code § 35-42-2-1.3(a)(1).

[2] The trial transcript spells Lorenzo's name "Dianne," whereas Jones's brief and certain documents in the appendix spell her name "Diane." We will use the former spelling.

Operator:  Do you need an ambulance?  Ma'am?

* * *

Lorenzo:  No.

Operator:  Okay, what is your name?

Lorenzo:  I'm Dianne Lorenzo.

Operator:  Okay, can you talk to me?

Lorenzo:  No . . . (unintelligible screaming).  Get away from me! (unintelligible screaming and sobbing).

State's Ex. 1.  Near the end of the call a man's voice can be heard, and the operator asks Lorenzo to put down the phone so that the operator can listen. The call abruptly ends a few seconds later.

[3]  When South Bend Police Officer Sean Killian arrived, Jones was outside of the residence; however, when Jones saw the police, he went back inside.  Initially, Officer Killian walked to a back window of the home.  He testified that he overheard Jones screaming at Lorenzo, instructing her to "tell [the police] to get the f**k out of here, and that I didn't do anything to you."  Tr. Vol. II p. 10. Soon thereafter, Officer Killian knocked on the door and Lorenzo answered. Officer Killian observed that "she had food stain [sic] on her, her hair was all frazzled, [and] she was totally hysterical, just in a very frenzied state."  *Id.* at 11. Within two to three minutes of meeting Lorenzo at the front door, Officer

Killian escorted her to his squad car and activated his body microphone and his car's video camera. While walking toward the car, Lorenzo cried, "[h]e's . . . been beating me up," and stated that she did not want Officer Killian to leave her and that she and Jones were married. State's Ex. 2.

[4] On October 24, 2016, the State charged Jones with Class A misdemeanor domestic battery. Jones's bench trial took place on March 16, 2017. Although Lorenzo did not testify, the trial court admitted the 911 call and the video recording into evidence and permitted Officer Killian to testify about Lorenzo's statements over Jones's objections. On April 28, 2017, the trial court found Jones guilty and sentenced him to a ninety-day executed sentence, with credit for nineteen days already served. Jones now appeals.

## Discussion and Decision

## I. Admission of Evidence

[5] Jones first argues that the trial court erred by admitting the 911 call and a portion of the video recording into evidence; he contends that doing so violated his confrontation rights and that the statements were inadmissible hearsay. We will reverse a trial court's decision to admit evidence only if the court's decision was clearly against the logic and effect of the facts and circumstances before it. *Thornton v. State*, 25 N.E.3d 800, 803 (Ind. Ct. App. 2015).

# A. Confrontation Rights[3]

The law regarding the Confrontation Clause and testimonial statements is well established:

> The Confrontation Clause of the Sixth Amendment to the United States Constitution prohibits the admission of an out-of-court statement if it is testimonial, the declarant is unavailable, and the defendant had no prior opportunity to cross-examine the declarant. Similarly, Article 1, Section 13 of the Indiana Constitution provides that "[i]n all criminal prosecutions, the accused shall have the right to . . . meet the witnesses face to face[.]" To determine whether a statement was testimonial, we look to the primary purpose of the conversation. If circumstances indicate that the primary purpose of the conversation was to gather evidence of past events potentially relevant to later prosecution, then the statements are testimonial and protected by the Confrontation Clause.

*Id.* (internal citations omitted). However, a statement may be non-testimonial if it is made "'in the course of [a] police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.'" *McQuay v. State*, 10 N.E.3d 593, 598 (Ind. Ct. App. 2014) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). In determining whether the statements at issue were non-testimonial, *Davis* considered several factors: "(1) whether the declarant was describing events 'as they were actually happening' or past events; (2) whether the

---

[3] The State contends that Jones has waived the Confrontation Clause issue. We assume solely for argument's sake that he has not.

declarant was facing an ongoing emergency; (3) whether the nature of what was asked and answered was such that the elicited statements were necessary to be able to resolve the present emergency rather than simply to learn about past events; and (4) the level of formality of the interview." *State v. Martin*, 885 N.E.2d 18, 20 (Ind. Ct. App. 2008) (quoting *Davis*, 547 U.S. at 827). We previously cautioned that these factors are not "an exhaustive list," nor do all of them need to be satisfied for a statement to be non-testimonial. *Collins v. State*, 873 N.E.2d 149, 154 n.2 (Ind. Ct. App. 2007).

# 1. 911 Call

[7] Applying the *Davis* factors, we conclude that the operator's questions objectively had the primary purpose of enabling police to meet an ongoing emergency. First, although the majority of Lorenzo's statements concerned past events, the information was relevant to whether Jones "posed a *present* danger[.]" *Id.* at 154-55 (emphasis original). Second, a reasonable factfinder could have determined that Lorenzo faced an ongoing emergency: she was extremely upset, she informed the operator that her husband had beaten her and that he was still in the house, she can be heard screaming "Get away from me," and a man's voice can be heard in the background. State's Ex. 1.

[8] Third, the operator focused on eliciting information necessary to evaluate and resolve Lorenzo's emergency—such as why she was calling, whether her attacker was still a threat, her location, whether she needed medical attention, and her name. *See McQuay*, 10 N.E.3d at 599 (holding initial questions

permitting police to learn about the "circumstances in which the crime had occurred" had the primary purpose of enabling police to meet an ongoing emergency); *see also Kimbrough v. State*, 911 N.E.2d 621, 632 n.2 (Ind. Ct. App. 2009) (noting that it was "readily apparent" that the purpose of a police dispatcher's questions was to resolve an ongoing emergency). Finally, the statements were frantically made during an informal 911 call. *See Collins*, 873 N.E.2d at 155 ("[T]he conversation occurred during a very informal 911 call, with the agitated [caller] providing answers regarding an ongoing emergency over the phone, not, for example, calmly relating past events in a relatively tranquil police station interrogation room."). In sum, the circumstances surrounding the 911 operator's questioning of Lorenzo objectively indicate that the primary purpose of the call was to assist police in meeting an ongoing emergency, making the statements non-testimonial. Therefore, the trial court did not err on this issue.

## 2. Video Recording

[9] The trial court admitted the first minute and twenty-seven seconds of the video recording from Officer Killian's squad car. This portion is largely unintelligible due to Lorenzo's hysterical state, and the portions that are discernible add nothing material to what she told the 911 operator. Additionally, the statements made by Lorenzo were not made in response to a question. *See Wallace v. State*, 79 N.E.3d 992, 999 (Ind. Ct. App. 2017) (finding statements overheard on a 911 call non-testimonial in part because the statements were "not responsive to any question posed by law enforcement"). While walking

toward Officer Killian's squad car, a panicked Lorenzo, without any prompting, exclaimed that: (1) she and Jones were married, (2) he had beaten her up, and (3) she did not want Officer Killian to leave her. State's Ex. 2. Officer Killian's only question in the admitted portion of the video recording was whether Lorenzo needed an ambulance.

[10] Even if, for argument's sake, Lorenzo's statements were responsive to some question, we cannot say the trial court erred. Applying the *Davis* factors, we observe initially that, like the 911 call, though the statements largely described past events, the information was relevant to whether Jones "posed a *present* danger[.]" *Collins*, 873 N.E.2d at 154-55 (emphasis original). Second, a reasonable factfinder could have determined that Lorenzo still faced an ongoing emergency. Officer Killian testified that he arrived at the scene "two to three minutes" after he was dispatched, and that, when Lorenzo answered the door, she was "[s]creaming, crying, [and] just giving us tidbits of that [sic] information . . . ." Tr. Vol. II p. 11, 49. Lorenzo's hair was "frazzled," she had food stains on her shoulder and hip, and Officer Killian had just overheard Jones yelling at her to tell the police to leave. *Id.* at 10-11.

[11] Third, considering Lorenzo's emotional state, physical appearance, and what Officer Killian overheard, there is no reason to conclude that his lone question in the admitted portion of the video—whether Lorenzo needed an ambulance— was asked for any reason other than to resolve an ongoing emergency. Finally, the exchange was extremely informal. The conversation occurred at or near the crime scene while Lorenzo and Officer Killian were walking toward his squad

car and standing in front of his squad car. *See McQuay*, 10 N.E.3d at 599 (determining that an officer's questions were informal when the questions were asked to the victim at the crime scene "in an 'exposed, public area, prior to the arrival of emergency medical services, and in a disorganized fashion.'" (quoting *Michigan v. Bryant*, 562 U.S. 344, 366 (2011))). In total, the circumstances objectively indicate that the primary purpose of the conversation—at least up to the one minute, twenty-seven second mark—was not to gather evidence of past events; thus, the statements were non-testimonial. The trial court did not err on this issue.

# B. Hearsay

[12] The law regarding hearsay and excited utterances is equally well established:

> Hearsay is an out of court statement offered to prove the truth of the matter asserted. It is inadmissible unless it falls under an exception. Among the exceptions to the hearsay rule [is the excited utterance exception]. . . . For a hearsay statement to be admitted as an excited utterance, three elements must be shown: (1) a startling event, (2) a statement made by a declarant while under the stress of excitement caused by the event, and (3) that the statement relates to the event. This is not a mechanical test. It turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications.

*Jenkins v. State*, 725 N.E.2d 66, 68 (Ind. 2000) (internal citations omitted).

# 1. 911 Call

It is undisputed that Lorenzo's statements in the 911 call qualify as hearsay; however, we cannot say the trial court erred in admitting the statements under the excited utterance exception. There is no question that a battery is a startling event. *E.g.*, *Fowler v. State*, 829 N.E.2d 459, 463-64 (Ind. 2005). It is also clear from the contents of the call that Lorenzo was under stress while speaking with the 911 operator. The statements are rushed, impossible to understand at times, and bear no suggestion of being planned, rehearsed, or otherwise disingenuous. Finally, it is undisputed that Lorenzo's statements directly related to the battery.

Jones testified that he arrived home around 10:00 p.m., and the police report indicates that the battery was reported at 1:19 a.m. Appellant's App. Vol. II p. 77. While there is no direct evidence as to when the startling event occurred, this factor is not dispositive. *See Jenkins*, 725 N.E.2d at 68. The trial court could have reasonably concluded that the event was ongoing when Lorenzo made the 911 call because Lorenzo can be heard screaming "Get away from me" at a man who can be heard speaking to Lorenzo. State's Ex. 1. Additionally, because Lorenzo was still under the stress of the event, it is not crucial to determine exactly how much time had passed. *See Boatner v. State*, 934 N.E.2d 184, 187 (Ind. Ct. App. 2010) (holding that, even though it was unclear when battery occurred, a trial court could conclude from victim's emotional state that victim's statements were made under the stress of the

event).  For these reasons, we cannot say the trial court erred in admitting the statements.

## 2. Video Recording

[15] Like the 911 call, there is no question that the video recording falls under the definition of hearsay; however, we cannot say that the trial court erred in admitting these statements under the excited utterance exception.  Lorenzo's statements on the admitted portion of the video recording largely mirror her 911 call in substance; the only difference is *when* they were made.  Officer Killian testified that he arrived at the scene within "two or three minutes" of the dispatch and that he spoke with Lorenzo "two to three minutes" after arriving.  Tr. Vol. II p. 21, 49.  Considering that Lorenzo was still upset when she spoke to Officer Killian and that her statements related to the startling event, we cannot say that the trial court erred in admitting the video recording as an excited utterance.  *See Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996) ("[T]he central issue is whether the declarant was still under the stress of excitement caused by the startling event when the statement was made.").

## II. Sufficiency of the Evidence

[16] Finally, Jones argues that there was insufficient evidence to convict him of domestic battery.  When reviewing challenges to the sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses.  *Bond v. State*, 925 N.E.2d 773, 781 (Ind. Ct. App. 2010).  Instead, we consider only the evidence most favorable to the verdict and the reasonable inferences drawn

therefrom, and we will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the verdict. *Id.* Reversal is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense. *Id.*

[17] To convict Jones of Class A misdemeanor domestic battery, the State was required to prove beyond a reasonable doubt that he "knowingly or intentionally" touched a "family or household member in a rude, insolent, or angry manner." I.C. § 35-42-2-1.3(a)(1). Jones does not argue that he did not knowingly or intentionally touch Lorenzo in a rude, insolent, and/or angry manner, nor does he dispute that Lorenzo's statements are sufficient to establish these elements. *See, e.g.*, *Young v. State*, 980 N.E.2d 412, 423 (Ind. Ct. App. 2012) (holding in part that a non-testifying victim's statement that the defendant "had beaten her" was sufficient to support a conviction for Class A misdemeanor domestic battery). It is also clear that Jones was a "family or household member" because Jones testified that he and Lorenzo were dating during the time in question. Tr. Vol. II p. 62, 67; Ind. Code § 35-31.5-2-128(a)(2) ("An individual is a 'family or household member' of another person if the individual: . . . (2) is dating or has dated the other person[.]").

[18] Jones's sole argument on appeal is that the State's evidence fails to establish the identity of Lorenzo's attacker. However, Lorenzo stated during the 911 call that her husband had beaten her, and the video recording established that she believed that she and Jones were married. Additionally, Officer Killian testified that no one was in the home besides Jones and Lorenzo and that Lorenzo

identified Jones as her attacker. Tr. Vol. II p. 45. Accordingly, a reasonable factfinder could infer from the evidence that Jones was the person Lorenzo referred to in the 911 call and video recording. In other words, a reasonable factfinder could infer that Jones was the person who battered Lorenzo. We find the evidence sufficient to support this conviction.

[19] The judgment of the trial court is affirmed.

Bailey, J., and Altice, J., concur.