## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 19 2019, 11:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Indianapolis, Indiana

Frederick Vaiana
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Frank A. Negangard
Chief Deputy Attorney General

Laura R. Anderson
Stephen R. Creason
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joaquin Alcauter,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 19, 2019

Court of Appeals Case No.
18A-CR-2211

Appeal from the Marion Superior Court

The Honorable Mark Stoner, Judge

Trial Court Cause No.
49G06-1710-F1-38408

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Joaquin Alcauter (Alcauter), appeals his conviction for one Count of child molesting as a Level 4 felony, Ind. Code § 35-42-4-3(b).

We affirm.

# ISSUE

Alcauter presents us with one issue on appeal, which we restate as: Whether the trial court abused its discretion when it admitted certain hearsay evidence as excited utterances.

# FACTS AND PROCEDURAL HISTORY

V.M. is the mother of Y.M., born in July 2008, and Y.M.'s younger brother, M.M. V.M. met Alcauter when Y.M. was approximately four years old. V.M. and Alcauter married in 2013. Alcauter was over the age of twenty-one the entire time he and V.M. were together.

V.M. has a much younger sister, A.D., who is only one year older than Y.M. Because of the closeness in their ages, Y.M.'s and A.D.'s relationship was more akin to two sisters, rather than that of niece and aunt. A.D. frequently spent the night at the home V.M. shared with Alcauter so that A.D. could spend time with Y.M. The night of September 29, 2017, was one such night. Early in the morning of September 30, 2017, Alcauter entered the bedroom that Y.M. and M.M. shared. M.M. had his own bed which was across the room from Y.M.'s. Y.M. and A.D. were sleeping in Y.M.'s bed. A.D. was under the covers and

awoke when she felt something warm touching her vagina over her pajamas. She saw that it was Alcauter touching her but pretended to be still asleep. A.D. shifted and moved her blanket. Alcauter moved his hand away but then tried to place it back on A.D.'s vagina. A.D. blocked his hand with her hand. Alcauter realized that A.D. was awake, removed his hand from underneath the covers, kissed A.D. on the forehead, and left the room.

[6] A.D. ran into V.M.'s bedroom and told V.M. that Alcauter had touched her vagina with his hand. V.M. calmed A.D., called her family to assist in moving the children to safety, and alerted the authorities. When Y.M. learned what had happened to A.D., she attempted to console A.D. by telling her that such things happened all the time, a statement which made V.M. aware for the first time that Y.M. may have been molested also. Y.M. and A.D. were interviewed on October 2, 2017, and disclosed that Alcauter had molested them. Alcauter gave a statement on October 4, 2017, in which he claimed that on the morning of the incident involving A.D., M.M. was in bed sleeping with Y.M. and A.D. and that M.M.'s leg was in between A.D.'s leg when Alcauter removed M.M. from the bed. At first Alcauter denied improperly touching Y.M., but he then reported that Y.M. had actually initiated sexual conduct with him. According to Alcauter, beginning when Y.M. was eight, she would sit on his lap and touch his penis, remove his penis from his pants, place his fingers in her vagina, and rub his penis on her vagina. Alcauter admitted that he had placed his penis in Y.M.'s vagina on two or three occasions, with the last time being in June 2017.

[7] On October 5, 2017, the State filed an Information, charging Alcauter with six Counts of child molesting as Class A/Level 1 felonies for offenses against Y.M.; three Counts of child molesting as Class C/Level 4 felonies for offenses against Y.M.; and one Count of Child molesting as a Level 4 felony for fondling A.D. On August 2, 2018, the trial court conducted Alcauter's bench trial. A.D. was the first witness to testify, and she recounted that Alcauter was "squeezing" her vagina with his hand on September 30, 2017. A.D. confirmed that she had run to V.M.'s room immediately after Alcauter touched her and stated that "I was very loud and I was crying" when reporting to V.M. what Alcauter had done. (Transcript p. 14).

[8] At trial V.M. described her usual morning routine that started around 5:00 a.m. when she would make coffee, prepare a lunch for Alcauter, and return to bed. Around 5:00 a.m. on the morning of September 30, 2017, V.M. awoke early to help get Alcauter out the door and then returned to bed, as was her habit. V.M. testified that approximately ten minutes after she returned to bed, A.D. ran into her room "terrified," "crying," and "shaking," and acting in a manner which V.M. had never seen her act before. (Tr. p. 32). Alcauter's counsel objected to V.M.'s testimony about what A.D. reported to her that morning, arguing that the State had not established an adequate foundation for the admission of excited utterances and objecting that "I don't believe that it necessarily has established that the client has been close enough." (Tr. p. 32). Over Alcauter's objection, the trial court admitted A.D.'s hearsay statements as excited utterances. V.M. then testified that A.D. had told her that Alcauter had rubbed

her. V.M. asked A.D. where Alcauter had rubbed her, and A.D. indicated her vagina. V.M. testified that A.D. then "just started crying so much. And she crawled in bed with me and wouldn't stop crying at that point." (Tr. p. 33).

[9] After the close of evidence, the State conceded that Y.M. had not testified at trial that Alcauter had inserted his fingers in her vagina, as she had previously reported, and, as a result, the trial court found Alcauter not guilty of four Counts of Class A /Level 1 felony child molesting of Y.M. and one Count of Class C felony child molesting of Y.M. The trial court found Alcauter guilty of two Counts of child molesting of Y.M. as Level 4 felonies but vacated them as lesser-included offenses. The trial court found Alcauter guilty and entered judgment of conviction on two Counts of Level 1 felony child molesting of Y.M. and one Count of Level 4 felony child molesting for fondling A.D. On August 16, 2018, the trial court sentenced Alcauter to thirty years for each of the Level 1 felonies and to six years for the Level 4 felony conviction. The trial court ordered Alcauter to serve all of his sentences consecutively, for an aggregate sentence of sixty-six years.

[10] Alcauter now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

[11] Alcauter argues that the trial court abused its discretion when it admitted A.D.'s hearsay statements because he contends that the State failed to establish an adequate foundation for their admission as excited utterances. As a general rule, a trial court has broad discretion in ruling on the admissibility of evidence,

and we will reverse a trial court's evidentiary ruling only upon an abuse of that discretion. *Carr v. State*, 106 N.E.3d 546, 552 (Ind. Ct. App. 2018), *trans. denied*. More particularly, a trial court's determination that hearsay statements are excited utterances is reviewed under this standard. *See Yamobi v. State*, 672 N.E.2d 1344, 1346 (Ind. 1996).

[12] Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay evidence is generally not admissible unless the Rules of Evidence or some other law provides for it. Evid. R. 802. One exception to the general prohibition on hearsay is that for the admission of excited utterances, which are defined as statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Evid. R. 803(2). Our supreme court has explained the rationale for the admission of excited utterances as follows:

The underlying rationale of the excited utterance exception is that such a declaration from one who has recently suffered an overpowering experience is likely to be truthful. While the event and the utterance need not be absolutely contemporaneous, lapse of time is a factor to consider in determining admissibility. Similarly, that the statements were made in response to inquiries is also a factor to be considered. Whether given in response to a question or not, the statement must be unrehearsed and made while still under the stress of excitement from the startling event.

*Hardiman v. State*, 726 N.E.2d 1201, 1204 (Ind. 2000) (citations omitted). The important inquiry is whether the declarant had time for reflection and deliberation before making the statements. *Id*. To have evidence admitted

pursuant to this exception, the proponent of the evidence must establish three foundations: (1) a startling event; (2) a statement made while the declarant was under the stress of excitement caused by the event; and (3) that the statement relates to the event. *Wallace v. State*, 79 N.E.3d 992, 997 (Ind. Ct. App. 2017). We do not apply this test mechanically; rather, we consider the particularities of each case. *See id.*

[13] Alcauter argues that the State's foundation for the challenged evidence was deficient because it failed to show the exact length of time that elapsed between the offense and A.D.'s statements to V.M. to establish that A.D. was still under the stress of the offense when she made her statements.[1] Our supreme court has held that the amount of time elapsed between the startling event and the statement is not dispositive, but that, the longer the time elapsed, the less likely that a particular statement is made without deliberate thought and under the stress of excitement of the event. *Jenkins v. State*, 725 N.E.2d 66, 68 (Ind. 2000). This court has found a sufficient showing that the declarant was still under the stress of the excitement of the startling event where, immediately after the event, she appeared "'hysterical,' 'shaken,' 'visibly upset,' 'crying,' and [was]

---

[1] Alcauter also argues that A.D. may have dreamed that he touched her vagina or, perhaps, that A.D. had a dream that resurrected memories of a prior molestation. However, Alcauter did not object on these bases at trial, and, therefore, he may not raise them now on appeal. *See Bush v. State*, 929 N.E.2d 897, 899 (Ind. Ct. App. 2010) (reiterating the well-settled principle that a party may not object to the admission of evidence at trial on one ground and then assert a different ground on appeal).

'speaking in very rapid movements.'" *McQuay v. State*, 10 N.E.3d 593, 597 (Ind. Ct. App. 2014).

[14] Here, the State's evidence showed that, on the morning of September 30, 2017, A.D. ran into V.M.'s room and reported that Alcauter had touched her vagina, which was a startling event for A.D., who described herself as "loud" and "crying" after it occurred. (Tr. p. 14). A.D. also established through her testimony that she ran into V.M.'s room immediately after Alcauter touched her. V.M. described A.D. as "terrified," "crying," and "shaking," and in a state such as V.M. had never seen her before. (Tr. p. 32). Thus, A.D.'s statements were made immediately after the startling event and were made while A.D. was still under the excitement of the stress of that event. *Jenkins*, 725 N.E.2d at 68; *McQuay*, 10 N.E.3d at 597. The State established an adequate foundation for the admission of A.D.'s statements as excited utterances, and the trial court did not abuse its discretion in admitting A.D.'s hearsay statements.

## CONCLUSION

[15] Based on the foregoing, we conclude that the trial court did not abuse its discretion when it admitted A.D.'s hearsay statements as excited utterances.

[16] Affirmed.

[17] Kirsch, J. and Robb, J. concur