

IN THE

# Court of Appeals of Indiana

Ryan David Quartier,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Apr 09 2025, 8:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

April 9, 2025

Court of Appeals Case No.
24A-CR-1381

Appeal from the Hendricks Superior Court

The Honorable Stephenie D. LeMay-Luken, Judge

Trial Court Cause No.
32D05-2305-F3-13

**Opinion by Judge Vaidik**
Chief Judge Altice and Judge Scheele concur.

**Vaidik, Judge.**

# Case Summary

[1] Ryan David Quartier was convicted of Level 3 felony criminal confinement while armed with a deadly weapon, Level 5 felony battery with a deadly weapon, and Level 6 felony battery resulting in moderate bodily injury and found to be a habitual offender after attacking Alicia Conner with a taser and punching her in the face. At trial, the court—over Quartier's hearsay objections—admitted body-camera footage of Conner's statement to police immediately following the attack and allowed Conner's deposition testimony to be read into evidence because she died before trial.

[2] Quartier now appeals, arguing that the body-camera footage and deposition testimony are inadmissible hearsay and that the evidence is insufficient to prove he used a deadly weapon. We affirm, concluding that: (1) the body-camera footage was admissible as an excited utterance because Conner was still under the stress of the attack when she gave her statement to police; (2) Conner's deposition was admissible as former testimony because Quartier's trial counsel had an opportunity and similar motive to develop Conner's testimony during her deposition as he would have at trial; and (3) even though a taser was never recovered, Conner's statements, her injuries, and the police officers' testimony sufficiently established that Quartier was armed with and used a taser.

# Facts and Procedural History

[3] The evidence most favorable to the convictions is as follows. In May 2023, Conner rented a room in Quartier's home. After staying with Quartier for several days, Conner booked a hotel room because she felt uncomfortable at Quartier's and "didn't wanna [sic] be there." Tr. Vol. II p. 202. Conner arranged for a coworker to take her to the hotel, but before her coworker arrived, Quartier came to her bedroom and tased her on her neck. He "t[old] [her] to get down on the ground" and "tased [her] multiple different times," mostly on her arms and neck. *Id.* at 203. Quartier put Conner's hand behind her back, put a sock in her mouth, and tried to put electrical tape over her mouth. The "taser ended up jamming because he was pressing it so much," and Quartier then punched Conner in her face and head. *Id.* at 204. While sitting on top of Conner, Quartier reached for her purse and took out her phone and her taser. He handed Conner her phone and said, "tell your ride to turn around," but she called 911 instead. *Id.* at 205. Realizing this, Quartier left the home and took the tasers with him. Conner told the 911 operator that the "guy [she] was staying with" was "going crazy" and that "he tased [her], he's strangling [her], he put his hands all over [her]." Ex. 2, 1:17. The call lasted around ten minutes, ending when police arrived.

[4] Avon Police Department Sergeant James Schwartz and Officers Sam Sims and Tanner Brennan arrived at Quartier's home at 1:16 p.m. They "could tell [Conner] was coming down from a very stressful or scary situation"—she "was in distress," "crying a lot[,] and couldn't really catch her breath." Tr. Vol. II pp.

138, 158, 179. The officers questioned Conner about the incident and recorded the conversation on their body cameras. Conner denied that she and Quartier had any kind of relationship. But when officers questioned Quartier later, he said he and Conner had been seeing each other and that she came at him with a taser after he told her he didn't want to pursue a relationship with her. Officers searched Quartier's home and car for the tasers but never found them.

[5] The State charged Quartier with Level 3 felony criminal confinement while armed with a deadly weapon, Level 5 felony battery with a deadly weapon, Level 5 felony criminal confinement with bodily injury, Level 6 felony strangulation, and Level 6 felony battery resulting in moderate bodily injury. The State also alleged Quartier is a habitual offender.

[6] In preparation for trial, defense counsel deposed Conner. Conner explained that Quartier "had a taser in his hand," "was tasing really closely," and that she "th[ought] the prongs did hit" her neck because she had "marks on [her] neck . . . from the taser." *Id.* at 203, 208. A few weeks after the deposition, Conner died from causes unrelated to this case. At a pretrial conference, defense counsel moved to exclude the body-camera footage of Conner and Conner's deposition because she would be unavailable for cross-examination. The trial court denied the motion and ordered that the State could use Conner's deposition in lieu of live testimony. Defense counsel also noted at the conference that Quartier's phone was released to him sometime after Conner's deposition and that he found photos and videos "of an adult nature" of Conner on the phone, which he believed was "exculpatory evidence" showing that Conner "was not truthful

in . . . her testimony in the deposition in regards to her relationship" with Quartier. *Id.* at 31.

[7] At the jury trial, Quartier sought to introduce the sexual photos and videos of Conner as "rebuttal testimony" because Conner had said during her deposition that she "really didn't know" him, so Quartier wanted to present the photos and videos to show that Conner "was not truthful" in her deposition testimony and that "there was more" between them. *Id.* at 122-24. The trial court admitted this evidence over the State's objection. Quartier also objected to the admission of Conner's 911 call on hearsay grounds, which the court overruled, finding that the call was admissible as an excited utterance.

[8] Officer Sims testified that when he saw Conner at the scene, she had two "bright red" marks on her neck that "look[ed] like two (2) little bee stings basically from where the taser was in her neck." *Id.* at 138, 145. He explained that a taser "can severely injure a person . . . in certain situations." *Id.* at 151. Sergeant Schwartz testified that Conner had "two (2) dots on her neck" "which could be indicative of a taser dry stun." *Id.* at 161. Officer Brennan, who took photos of Conner's injuries at the scene, described the redness he saw on Conner's neck, forehead, arms, and legs. The photos of Conner's injuries were admitted into evidence. *See* Exs. 10, 21-29. Defense counsel renewed his objection to the body-camera footage of Conner, which the trial court overruled, finding that Conner's statements in the footage were excited utterances because Conner was "visibly upset" and "shaking" and "[h]er voice [wa]s . . . shaking." Tr. Vol. II p. 157.

[9] The jury found Quartier guilty of Level 3 felony criminal confinement while armed with a deadly weapon, Level 5 felony battery with a deadly weapon, Level 5 felony criminal confinement with bodily injury, and Level 6 felony battery resulting in moderate bodily injury but not guilty of Level 6 felony strangulation. Quartier waived his right to a jury trial on the habitual-offender enhancement, and the trial court found him to be a habitual offender. At sentencing, the court merged the conviction for Level 5 felony criminal confinement with bodily injury into the Level 3 felony and sentenced Quartier to a total term of twenty-six years.

[10] Quartier now appeals.

## Discussion and Decision

### I. The trial court did not abuse its discretion in admitting Conner's out-of-court statements

[11] Quartier first argues the trial court erred in admitting the body-camera footage of Conner and Conner's deposition because this evidence was inadmissible hearsay.[1] Generally, trial courts have broad discretion in ruling on the admissibility of evidence, and we review only for an abuse of that discretion. *Chambless v. State*, 119 N.E.3d 182, 188 (Ind. Ct. App. 2019), *trans. denied*. An

---

[1] In his brief, Quartier initially argues that Conner's 911 call was also inadmissible hearsay. *See* Appellant's Br. pp 8, 10-11. But in his discussion of the excited-utterance exception, he doesn't claim that the 911 call was not an excited utterance. Because Quartier failed to develop any argument he may have had as to the 911 call, we do not address its admission.

abuse of discretion occurs where the trial court's decision is clearly against the logic and effect of the facts and circumstances. *Id.*

[12] Hearsay is a statement, not made by the declarant while testifying at trial, "offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is inadmissible unless it falls under an exception. Evid. R. 802. Here, the trial court found that the body-camera footage of Conner was admissible under the excited-utterance exception. An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Evid. R. 803(2). The party seeking admission of hearsay under this exception must show: (1) a startling event; (2) a statement made by the declarant while under the stress of excitement caused by the event; and (3) a relationship between the statement and the event. *Jenkins v. State*, 725 N.E.2d 66, 68 (Ind. 2000). This "is not a mechanical test" and "turns on whether the statement was inherently reliable because the witness was under the stress of an event and unlikely to make deliberate falsifications." *Id.* Factors to consider in determining admissibility include the lapse of time between a statement and the startling event and whether a statement was made in response to questioning, though neither factor is dispositive. *Hardiman v. State*, 726 N.E.2d 1201, 1204 (Ind. 2000).

[13] Quartier contends Conner was no longer under the stress of a startling event when she gave her statement to police because "there was a relevant passage of time" between the attack and the statement and because the statement "was the product of questioning and prodding." Appellant's Br. p. 14. He relies on *Hurt*

*v. State*, 151 N.E.3d 809 (Ind. Ct. App. 2020), but that case is easily distinguishable. There, a police officer responded to a domestic disturbance between Hurt and his wife, both of whom had visible injuries. The officer spoke to the couple, then interviewed Hurt separately for several minutes, and then questioned his wife about her injuries, all of which was recorded on his body camera. The wife was "visibly intoxicated" but "calm" and didn't become upset until the officer mentioned that Hurt might go to jail. *Id.* at 814. Throughout the questioning, the wife "was deliberating—albeit drunkenly—about how to respond to repeated questioning over the course of several minutes." *Id.* (quotation omitted). On appeal, we concluded that the body-camera footage of the wife's interview—which occurred at least fifteen minutes after the 911 call— was not admissible as an excited utterance because she was no longer under the stress of the startling event when she gave her statement to the officer.

[14] Here, Conner called 911 during the attack by Quartier. The 911 call lasted around ten minutes and ended when the police arrived at 1:16 p.m. Unlike in *Hurt*, where the officer spoke to the couple together and then questioned Hurt separately for several minutes before interviewing his wife, Conner began telling officers what happened as soon as they arrived. And while Hurt's wife was calm, as the trial court here observed, Conner was "visibly upset" and "shaking" and "[h]er voice [wa]s . . . shaking." The responding officers confirmed this—Sergeant Schwartz testified that Conner "was in distress," Officer Sims testified that he "could tell she was coming down from a very stressful or scary situation," and Officer Brennan testified that she was "crying a

lot and couldn't really catch her breath." Pointing to the fact that Conner was responding to the officers' questions and that she revealed more details about the attack as the questioning went on, Quartier argues that "[l]ike the waffling in *Hurt*, the evidence here shows a capacity for deliberation." Appellant's Br. p. 14. But in *Hurt*, there was more than a capacity for deliberation—the body-camera footage actually "show[ed] that Hurt's wife was deliberating . . . about how to respond to repeated questioning over the course of several minutes." Unlike the wife in *Hurt*, the circumstances here establish that Conner was still under the stress of the attack when she gave her statement to officers. *See Chambless*, 119 N.E.3d at 190 (finding victim's statements in 911 call "were unrehearsed and made while still under the stress" from attack and thus were admissible as excited utterances where victim called 911 "a short time after she was attacked, not giving her time for thoughtful reflection," and "had trouble breathing" during call). Thus, the trial court did not err in admitting the body-camera footage under the excited-utterance exception.

[15]    Another exception to the rule against hearsay can be found in Evidence Rule 804(b)(1), which makes a witness's former testimony admissible when the witness is unavailable for trial. "Former testimony" is defined as testimony that:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

> (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Evid. Rule 804(b)(1). The decision to admit an unavailable witness's former testimony is within the sound discretion of the trial court, and we will not reverse "absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial." *Burns v. State*, 91 N.E.3d 635, 639 (Ind. Ct. App. 2018).

[16] Quartier contends Conner's deposition was not admissible under the former-testimony exception because his counsel did not have an opportunity or similar motive to develop Conner's testimony during the deposition as he would have at trial. He argues that because his counsel didn't know about the sexually explicit content of Conner on his phone until after her deposition, his counsel "simply did not intend or could not have imagined that the discovery deposition should have included probing questioning designed to 'disparage' [Conner] or to cast doubt on her credibility." Appellant's Br. pp. 15-16. But defense counsel knew before the deposition that there were discrepancies in Conner's and Quartier's characterizations of their relationship. On the day of the attack, Conner insisted to police that she and Quartier were never in a relationship, but Quartier said they'd been seeing each other and that she attacked him after he told her he didn't want to pursue a relationship. So, even though defense counsel didn't know about the explicit content before the deposition, he still had the opportunity to develop Conner's testimony about the nature of her relationship with Quartier. We are not convinced by Quartier's suggestion that his counsel had no motive to question Conner about this or to undermine her credibility during her deposition. *See Berkman v. State*, 976

N.E.2d 68, 78 (Ind. Ct. App. 2012) ("We believe that a prudent defense attorney conducting a discovery deposition in a criminal case would . . . explore avenues by which the testimony or the witness's credibility might be attacked."), *trans. denied*.

[17] In any event, Quartier has not shown that the admission of Conner's deposition denied him a fair trial. His only argument is that, had his counsel known of the sexually explicit content of Conner at the time of her deposition, "he could have tried to undermine [Conner's] claims about the nonexistence of a romantic relationship." Appellant's Reply Br. p. 6. But Quartier's counsel was still able to undermine these claims at trial because the court admitted the sexually explicit content for this exact purpose—the court allowed the photos and videos into evidence as "rebuttal to say that she wasn't telling the truth" and "that there was more" between Conner and Quartier. Tr. Vol. II p. 123. Because Quartier's counsel had an opportunity and similar motive to develop Conner's testimony during her deposition as he would have at trial, and because he was still able to use the sexually explicit content in an effort to undermine Conner's credibility at trial, the court did not abuse its discretion in admitting Conner's deposition testimony.

## II. There is sufficient evidence that Quartier was armed with and used a deadly weapon

[18] Quartier also argues the evidence is insufficient to sustain his convictions for Level 3 felony criminal confinement while armed with a deadly weapon and Level 5 felony battery with a deadly weapon. When reviewing sufficiency-of-

the-evidence claims, we neither reweigh the evidence nor judge witness credibility. *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015). We consider only the evidence supporting the verdict and any reasonable inferences that can be drawn from it. *Id.* We will affirm a conviction if there is substantial evidence of probative value to support each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.*

[19] Quartier contends the State failed to establish that he used a deadly weapon. As relevant here, "deadly weapon" is defined as:

> A destructive device, weapon, device, taser (as defined in IC 35-47-8-3) or electronic stun weapon (as defined in IC 35-47-8-1), equipment, chemical substance, or other material that in the manner it:
>
> > (A) is used;
> >
> > (B) could ordinarily be used; or
> >
> > (C) is intended to be used;
>
> is readily capable of causing serious bodily injury.

Ind. Code § 35-31.5-2-86(a)(2). "Whether an object is a deadly weapon is a question of fact determined from the nature of the object, how the defendant actually used the object, and the circumstances of the particular case." *Owens v. State*, 224 N.E.3d 984, 995 (Ind. Ct. App. 2023), *trans. denied.*

[20] Quartier claims that because "no taser was ever found, . . . it is impossible to know whether the taser in this case" could cause serious bodily injury. Appellant's Br. p. 19. But the State need not prove the exact object the defendant used. *Owens*, 224 N.E.3d at 995. Instead, "[t]he fact finder may look to whether the weapon had the actual ability to inflict serious injury under the fact situation and whether the defendant had the apparent ability to injure the victim seriously through use of the object during the crime." *Moore v. State*, 137 N.E.3d 1034, 1037 (Ind. Ct. App. 2019).

[21] Conner testified in her deposition that Quartier had a taser in his hand and tased her "really closely," that the "taser ended up jamming because he was pressing it so much," and that she thought the prongs hit her in the neck because of the "marks on [her] neck . . . from the taser." When Conner called 911, she told the operator the "guy [she] was staying with" had tased her. At trial, the responding officers corroborated the "marks" on Conner's neck— Officer Sims testified that Conner had "bright red" marks that "look[ed] like two (2) little bee stings basically from where the taser was in her neck," and Sergeant Schwartz testified that Conner had "two (2) dots on her neck" "which could be indicative of a taser dry stun." Officer Sims also explained that a taser can "severely injure" someone "in certain situations." And the jury saw photos of Conner's injuries, which show the "dots" on her neck from the taser "prongs." *See* Exs. 10, 21. From this evidence, the jury could reasonably conclude that Quartier was armed with and used a taser and that the taser was readily capable of causing serious bodily injury. *See Grogg v. State*, 156 N.E.3d

744, 750-51 (Ind. Ct. App. 2020) (finding "flashlight type electrical device" was deadly weapon because it had ability to cause serious bodily injury, even though State did not establish whether it was taser or stun gun), *trans. denied*; *Buckner v. State*, 857 N.E.2d 1011, 1018 (Ind. Ct. App. 2006) (concluding stun gun was deadly weapon readily capable of causing serious bodily injury where shocks left marks on victim and caused her pain). The evidence is sufficient to sustain Quartier's convictions for Level 3 felony criminal confinement while armed with a deadly weapon and Level 5 felony battery with a deadly weapon.

[22] Affirmed.

Altice, C.J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zackary J. Stock, Attorney At Law, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana